IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   14-cv-00802-WYD-CBS

HOMAIDAN AL-TURKI,

     Plaintiff,

v.

DEPARTMENT OF JUSTICE,

     Defendant.

---

## ORDER ON SUMMARY JUDGMENT

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment which is fully briefed.  By way of background, this case involves Plaintiff's request pursuant to the Freedom of Information Act ["FOIA"] seeking all Federal Bureau of Investigation ["FBI"] records mentioning him.  Defendant responded to Plaintiff's FOIA request by releasing some documents and claiming exemptions for others.  Defendant divides its documents into two categories for purposes of the claimed exemptions: (1) exemptions for documents *not related* to ongoing investigation and (2) exemptions for documents *related* to ongoing investigations.  Defendant's Motion for Summary Judgment explains the FOIA exemptions it relies on as to the documents and information that were withheld, and asserts that Plaintiff has been provided all responsive documents subject to FOIA and not subject to an exemption.

II.   BACKGROUND

I have considered all the facts asserted in the summary judgment motion, as well as the responses and replies as to these facts, but have cited only those facts I deem most material to my ruling.  As to many of the material facts asserted by Defendant, Plaintiff has responded that he is without sufficient information to admit or deny the fact. Defendant argues that this does not create a genuine issue of material fact and that the asserted fact should be admitted.  There is some authority for this argument.  *See F.D.I.C. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986); *Newsom v. Big M. Transp., Inc.*, No. 1:13cv58 SNLJ, 2014 WL 4978618, at *3 (E.D. Mo. Oct. 6, 2014); *see also Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In response to a motion for summary judgment, a party cannot rest on ignorance of facts. . .").  Indeed, a party is required when disputing a fact to cite to specific references in the record supporting the denial.  *See* Fed. R. Civ. P. 56(c)(1); Practice Standards for Civil and Criminal Matters before Senior Judge Wiley Y. Daniel, § II.B.4.  This makes sense in a typical case where a party who is without sufficient knowledge or information about an asserted fact could request discovery about that fact pursuant to Fed. R. Civ. P. 56(e).

However, I find that logic does not apply in a case such as this under FOIA, where the withheld documents purportedly implicate national security, ongoing government investigations, and other sensitive information as declared in the Declarations attached to the Motion for Summary Judgment.  In that situation, the plaintiff cannot seek discovery about the documents, and is often unable to verify the truth or falsity of the facts asserted by the government.  Thus, I find it improper to deem

those facts admitted.  Instead, I will consider the source of the facts alleged by

Defendant and the level of detail provided to determine if the allegations are sufficiently

supported.  *See Hull v. I.R.S.*, 656 F.3d 1174, 1177 (10th Cir. 2011) ("'[a]ffidavits must

show, with reasonable specificity, why the documents fall within the exemption' and 'will

not suffice if the agency's claims are conclusory, merely reciting statutory standards, or

if they are too vague or sweeping'") (quotation omitted).  I discuss the standard relevant

to affidavits in support of the motion in more detail below.

Turning to the background facts, Plaintiff is a citizen of Saudi Arabia.  He was

indicted on June 9, 2005, in this Court on the following four counts:  Forced

Labor/Attempted Forced Labor, Document Servitude, Harboring an Alien, and a

Forfeiture Allegation.  (Indictment, Ex. 1 to Pl.'s Resp. to Def.'s Mot. Summ. J. ["Pl.'s

Resp."]; *see also United States v. Al-Turki*, No. 05-cr-280-WDM, ECF No. 8.)

On August 18, 2006, Plaintiff was sentenced by a Colorado state court to 28

years to life following his conviction for various other offenses.  The convictions included

false imprisonment, 12 counts of unlawful sexual contact, extortion, and theft of $15,000

or more.  *People v. Al-Turki*, 2005CR1571 (Arap. County).  Plaintiff's sentence in state

court was later reduced in February 2011 to 8 years to life.

On October 10, 2006, the United States' motion to dismiss the indictment against

Plaintiff was granted as to the case pending in this Court.  *United States v. Al-Turki*, No.

05-cr-280-WDM (D. Colo.).

On May 6, 2013, Plaintiff, through his attorney, requested from the FBI all

documents mentioning Homaidan Al-Turki (or any variation of that spelling), born on a

certain date in 1968 ["the FOIA Request"].  The documents sought in the FOIA Request

included, but were not limited to, interviews, investigative reports, photographs, or

summaries.  The FBI denied the FOIA request.  Plaintiff appealed administratively, and

the administrative appeal was denied.  Plaintiff then filed this case.

On October 1 and 7, 2014, the FBI released documents to Plaintiff's counsel in

response to Defendant's FOIA request.  The releases included documents bates

labeled Al-Turki 1 to Al-Turki 726.  All pages Al-Turki 1 to Al-Turki 143 were released;

the remainder of the release omits certain pages but includes  "Deleted Page

Information Sheets" stating which pages were omitted and the exemptions claimed for

those omissions.  Certain information was also deleted/redacted.  I requested and

received a copy of Defendant's FOIA production (*see* Notice of Filing of Documents

Released Under FOIA, ECF No. 41, filed July 17, 2015), and have reviewed those

documents in connection with the summary judgment motion.  I discuss the facts

applicable to the specific exemptions in the sections addressing those exemptions.

III.     ANALYSIS

A.     Standard of Review

Summary judgment may be granted where the pleadings, depositions, discovery

responses and affidavits "show that there is no genuine issue as to any material fact

and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the

outcome of the lawsuit."  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184,

1190 (10th Cir. 2000). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Horizon*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). The court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Id.* (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.   FOIA Background

FOIA was passed in 1966 "to provide a public right of access, enforceable in federal court, to agency records." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007). "The purpose of the Act 'is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" *Id.* (quotation omitted). FOIA "confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)). "Notwithstanding FOIA's aspiration of governmental transparency, Congress recognized that disclosure of certain classes of documents could harm legitimate government

interests." *Trentadue*, 501 F.3d at 1225-26.  Nine specific exemptions were created that allow agencies to withhold otherwise responsive documents.  *Id.* at 1226.

In considering whether information should be disclosed under FOIA, two guiding principles apply.  *Trentadue*, 501 F.3d at 1226.  "First, FOIA is to be broadly construed in favor of disclosure."  *Id.*  "Second, its exemptions are to be narrowly circumscribed."  *Id.*  "'[A]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'"  *Id.* (quoting 5 U.S.C. § 552(b)).  "'To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records.'"  *Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 135 (D.D.C. 2013) (quotations omitted).  "The federal agency resisting disclosure bears the burden of justifying withholding."  *Trentadue*, 501 F.3d at 1226.

"To satisfy its burden of proof under FOIA, an agency typically submits affidavits." *Hull*, 656 F.3d at 1177.  The affidavit "must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'"  *Poll v. U.S. Office of Special Counsel*, No. 99-4021, 2000 WL 14422, at *2 (10th Cir. Oct. 14, 1999) (quotation omitted).  "Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994); *see also Hull*, 656 F.3d at 1177.

Thus, if the affidavits provided by the government "'provide specific information sufficient to place the documents within the exemption category, if the information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.'" *Hull*, 656 F.3d at 1177 (quotation omitted).  However, if the court is "unsatisfied with the agency's affidavits or declarations", it may, "in its discretion, . . . order the agency to produce a *Vaughn* index or to submit the requested information for an in camera review." *Id.* at 1178[1]; *see also DeSalvo v. I.R.S.* 861 F.2d 1217, 1222 n. 6 (10th Cir.1988) ("The FOIA allows the district court flexibility in utilizing [an] in camera review of the disputed documents, . . .detailed affidavits, or alternative procedures to determine whether a sufficient factual basis exists for evaluating the correctness of the [agency] determination. . .").  "But 'an *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'" *Id.* (quotation omitted).

Ultimately, it has been held that "'an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotations and internal quotation marks omitted).  If the plaintiff can "offer[] nothing more than opinion and speculation" regarding the content of the government's sworn declarations, he "does not undermine the deference normally accorded to an agency." *Carter*, 962 F. Supp. 2d at 140; *see also Daly v. Fed. Bureau of Prisons*, No. 09-cv-01722-PAB-BNB, 2011 WL 588046, at *6 (D. Colo. Jan. 7, 2011)

---

[1] "'A *Vaughn* index is a compilation prepared by the government agency ... listing each of the withheld documents and explaining the asserted reason for its nondisclosure.'" *Id.* (quotation omitted).

("if the agency's affidavits are reasonably clear, specific, and detailed, the court normally affords agency determinations substantial weight").

In the case at hand, a public declaration of David M. Hardy ["Hardy"], the Section Chief of the Record/Information Dissemination Section, Records Management Division in  Virginia, was filed in support of Defendant's summary judgment motion as Exhibit 1.[2] Also, Defendant filed a Motion for Leave to File *In Camera* and *Ex Parte* Declaration of Hardy which was granted by Order of May 13, 2015.  The *Ex Parte, In Camera* Declaration was filed on May 21, 2015.  (*See* Notice of *Ex Parte, In Camera* Filing, ECF No. 40.)  I have reviewed the *ex parte* classified Declaration, and I agree with Defendant that it provides additional details concerning its withholdings of materials under the FOIA exemptions at issue.

     C.     Applicability of Exemptions Claimed by Defendant

          1.     Documents Not Related to Ongoing Investigation

               a.     Exemption (b)(1): Classified Information[3]

Exemption (b)(1) of FOIA ["Exemption 1"] protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified

---

[2] This was Hardy's Third Declaration.  (ECF No. 26-1.)  His First Declaration was filed on June 4, 2014 (ECF No. 14-1), and his Second Declaration was filed on September 19, 2014 (ECF No 17-1).

[3] This is referred to by Defendant as exemption (b)(1)-1.  (Hardy Decl., ¶ 9.)  Exemptions are identified by code in Defendant's motion and Hardy's Third Declaration.  The letters and numbers refer to the FOIA statutory basis and the number following the hyphen refers to a category that falls under that statutory basis. Thus, (b)(1)-1 refers to Exemption (b)(1) (at 5 U.S.C. § 552(b)(1)) and specifically intelligence activities, sources and methods.  Some exemptions have a number of different categories, such as Exemption (b)(6).  Exemptions and categories are listed in table form in paragraph 9 of Hardy's Third Declaration.

pursuant to such Executive order." 5 U.S.C. § 552(b)(1).[4]  In reviewing withholdings

under Exemption 1, courts accord "substantial weight" to agency declarations regarding

the classified status of disputed records "'because the Executive departments

responsible for national defense and foreign policy matters have unique insights into

what adverse affects [sic] might occur as a result of a particular classified record.'"

*Larson*, 565 F.3d at 864 (quotation omitted).

 Here, Defendant claims that documents it withheld are exempt from disclosure

under Exemption 1 because they are currently properly classified pursuant to Executive

Order ["E.O."] 12958 as information concerning "intelligence sources or methods".  It is

undisputed that Exemption 1 was cited, at time in conjunction with (b)(3) and/or

(b)(7)(E), on the following pages: Al-Turki-355; 357-8; 361; 372; 571; and 576.  (Third

Decl. of David M. Hardy, Ex 1 to Mot. Summ. J. [hereinafter "Hardy Decl."], ¶ 19.)

Hardy states that any reasonably segregable portions of those classified documents

that did not meet the standard for classification under E.O. 13526 were declassified and

marked for release, unless withholding was warranted under other applicable law.  (*Id.*,

¶ 17.e.)

 For information to be properly classified and thus properly withheld from

disclosure pursuant to Exemption 1 the information must meet the requirements set

forth in E.O. 13526, §1.1(a):  (1) an original classification authority is classifying the

information; (2) the information is owned by, produced by or for, or is under the control

of the United States Government; (3) the information falls within one or more of the

---

[4] I note that Defendant has in many instances invoked several exemptions independently.

categories of information listed in § 1.4 of the E.O. 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

I find that Defendant has met its burden of showing that Exemption 1 applies to the information withheld under this exemption because the FBI has shown through the Hardy Declaration that each of the requirements of E.O. 13526 §1.1(a) has been met. The requirements of E.O. 13526, §1.1(a) are met as follows:

*(1) an original classification authority is classifying the information.*  FBI declarant Hardy is an original classification authority.  (Hardy Decl., ¶ 13.)  Plaintiff admits this.

(*2*) *the information is owned by, produced by or for, or is under the control of the United States Government.*  Hardy stated he personally and independently examined the information withheld from Plaintiff pursuant to FOIA Exemption 1.  (Hardy Decl., ¶¶ 13, 14.)  He determined that this classified information is owned by, was produced by or for, and/or is under the control of the United States Government.  (*Id.*)  Plaintiff has not presented any evidence to refute this.

*(3) the information falls within one or more of the categories of information listed in § 1.4 of the Executive Order.*  Hardy determined that the information falls within §1.4(c), intelligence activities, sources, and methods.  (Hardy Decl., ¶ 15.)  He asserts that information was withheld to protect intelligence methods utilized by the FBI for gathering intelligence data.  (*Id.*)  The material is classified, according to Hardy, and

requires a classification marking at the "Secret" level, because the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security.  (*Id.,* ¶ 13.)  Hardy asserts more specifically that the material is classified because its release would reveal intelligence activities used by the FBI against specific targets of foreign counterintelligence investigation(s) or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets.  (*Id.*, ¶ 16.) Plaintiff has not provided any evidence to refute this.

*(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.*   Hardy asserts that the information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.  (Hardy Decl., ¶ 16.)  It is Hardy's determination that disclosure of specific information describing the intelligence activities or methods that have been or are being used in this case, and which are still used by the FBI to gather intelligence information in other cases, could reasonably be expected to cause serious damage to the national security for the following reasons:  (a) disclosure would allow hostile entities to discover the current intelligence gathering methods used by the FBI; (b) disclosure would reveal current specific targets of the FBI's national security investigation(s); and (c) disclosure would reveal the determination of the criteria used and priorities assigned to current

intelligence or counterintelligence investigation(s).  (*Id.*, ¶ 17.)  With the aid of this detailed information, Hardy states that hostile entities could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities.  This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.  (*Id.*)

Further, Hardy asserts that the classified information withheld in these documents contains detailed intelligence activity by the FBI on a specific individual or organization of national security interest.  (Hardy Decl., ¶ 18.)  Hardy states that the disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would reveal the actual intelligence activity or method utilized by the FBI against a specific target.  (*Id.*)  This information is properly classified at the "Secret" level pursuant to E.O. 13526, § 1.4(c), and Hardy asserts it is exempt from disclosure.  (*Id.*)  It is Hardy's determination that the release of this information could permit hostile individuals and foreign governments to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence-gathering methods and activities, and allow the targets and opportunity to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information.  (Hardy Decl., ¶ 19.)

In short,  FBI declarant Hardy described how unauthorized disclosure of the information for which Defendant asserted this exemption could reasonably be expected to result in damage to the national security.  Furthermore, he identifies and describes

that damage.  I give deference to Hardy's statements on this issue, noting they have not been contested in any matter.

In addition to the substantive requirements for information to be classified and withheld from disclosure under Exemption 1, certain procedural and administrative requirements of E.O. 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents.  Hardy asserts that he made certain that all procedural requirements of E.O. 13526 were followed in order to ensure the information was properly classified.  He made certain that: (a) each document was marked as required and stamped with the proper classification designation; (b) each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 13526, §1.5 (b), and which portions are unclassified; (c) the prohibitions and limitations on classification specified in E.O. 13526, §1.7, were adhered to; (d) the declassification policies set forth in E.O. 13526, §§3.1 and 3.3 were followed; and (e) any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.  (Hardy Decl., ¶ 13.)

Plaintiff has not presented the court with any contrary evidence as to Exemption 1 or evidence suggesting bad faith on the part of Defendant in withholding documents under this exemption.  Indeed, he made no argument in his response as to why Exemption 1 is inapplicable.  Further, Plaintiff did not specifically deny Hardy's statements in his Declaration as to Exemption 1, asserting only that he was without

sufficient information or knowledge to admit or deny the assertions.  I find that Hardy's

Declaration provides specific information sufficient to place the documents within the

exemption category, and that the information provided is plausible and logical.

Thus, I accept the assertions in the Hardy Declaration and find that Defendant

has met its burden of showing the applicability of Exemption 1 to the documents/

information at issue.  Further, Plaintiff has not come forward with specific facts

demonstrating that there is a genuine issue with respect to whether Defendant

improperly withheld agency records under this exemption.  *Carter*, 962 F. Supp. 2d at

135.  Accordingly, Defendant's Motion for Summary Judgment is granted to the extent

documents/information were withheld under Exemption 1.

> b.    Exemption (b)(3): Information Protected by Statute

Exemption (b)(3) ["Exemption 3"] permits an agency to withhold information that

is "specifically exempted from disclosure by statute . . . if that statute (A) requires that

the matter be withheld from the public in such a manner as to leave no discretion on the

issue or (B) establishes particular criteria for withholding or refers to particular types of

matters to be withheld."  5 U.S.C. § 552(b)(3).  The "purpose of Exemption 3 [is] to

assure that Congress, not the agency, makes the basic nondisclosure decision."  *Ass'n*

*of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir.

1987).  "Exemption 3 presents considerations distinct and apart from the other eight

exemptions."  *Id.*  "'[I]ts applicability depends less on the detailed factual contents of

specific documents; the sole issue for decision is the existence of a relevant statute and

the inclusion of withheld material within the statute's coverage.'" *Id.* (quoting *Goland v. CIA*, 607 F.2d 339, 359 (D.C. Cir. 1978)).

Two requirements must be satisfied to meet the requirements of Exemption 3. The government must "show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute. *Larson*, 565 F.3d at 865; *see also C.I.A. v. Sims*, 471 U.S. 159, 167-68 (1985) (setting forth two-part test).

                i.      Re 50 U.S.C. § 3024(i)(1) (National Security Act)[5]

Defendant cited Exemption 3, at times in conjunction with Exemption 1 and/or b)(7)E), on the following pages: Al-Turki-333; 355; 357-8; 361; 372; 571; and 576.  I ruled in the previous section that Defendant met its burden of showing that many of these documents were properly withheld from disclosure under Exemption 1, and granted Defendant's summary judgment motion on this issue.  I now address whether these documents were also properly withheld under category 1 of Exemption 3 in connection with the National Security Act of 1947 ["NSA"], as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ["IRTPA"], 50 U.S.C. § 3024(i)(1).

Section 1024(i)(1) of the NSA provides that the Director of National Intelligence "shall protect from unauthorized disclosure intelligence sources and methods."[6]  This

---

[5] This is referred to by Defendant as Category (b)(3)-1.  (Hardy Decl., ¶ 9.)  I will refer to it as category 1 of Exemption 3.

[6] Section 1024(i)(1) of the NSA was previously codified at 50 U.S.C. § 403(i)(1).  As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).  Relevant to 5 U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of

statute qualifies as a withholding statute under Exemption 3 and meets the first requirement for the exemption. *Sims*, 471 U.S. at 168. On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Indeed, the Supreme Court has held that the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) "is as absolute as possible." *Id.* at 175.

Thus, the issue becomes whether the withheld material falls within the statute, *i.e.,* relates to intelligence sources and methods. *Sims*, 471 U.S. at 168. To fulfill its obligation of protecting intelligence sources and methods, the Director of National Intelligence is authorized to establish and implement guidelines for the Intelligence Community for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1) and (2). The FBI is one of 17 agencies comprising the Intelligence Community, and must protect intelligence sources and methods. Agencies such as the FBI who protect the intelligence sources and methods are "familiar with 'the whole picture,' as judges are not'", and "are worthy of great deference given the magnitude of the national security interests and potential risks at stake." *Sims*, 471 U.S. at 179; *see also Larson*, 565 F.3d at 865 (the court must accord "substantial weight" to the government's affidavits).

Defendant asserts that the exempted material in this case falls within the scope of the NSA. Given that Congress specifically prohibited the disclosure of information

---

enactment of the OPEN FOIA Act of 2009.

pertaining to intelligence sources and methods used by the Intelligence Community as a whole, Hardy asserts that he determined the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff.  (Hardy Decl., ¶ 23.)  Plaintiff has not denied this or presented any contrary evidence, instead asserting only that he is without sufficient knowledge or information to admit or deny whether Hardy's determination is accurate.  Moreover, Plaintiff made no argument in his response as to why Exemption 3 is inapplicable as to the withholding of documents under the NSA.  I accord substantial weight to Hardy's determination that the exempted material at issue falls within the scope of the NSA, and find that Defendant has met its burden of showing that the documents/information withheld under this exemption were properly withheld under 50 U.S.C. § 3024(i)(1).  Accordingly, Defendant's Motion for Summary Judgment is granted as to this issue.

>   ii.   18 U.S.C. § 3509 (Child Victims' and Child Witnesses' Rights Act)[7]

In its summary judgment motion, Defendant also asserted Exemption 3 based on the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d)(1).  However, Defendant withdrew its reliance on this in its Reply in Support of Motion for Summary Judgment, at page 2.  Accordingly, I deny as moot the Motion for Summary Judgment to the extent it relies on this category—category 2 of Exemption 3.  Defendant has, however, claimed that other exemptions protect this information.

---

[7] This is referred to by Defendant as Category (b)(3)-2.  (Hardy Decl., ¶ 9.)  I will refer to it as category 2 of Exemption 3.

c. <u>Exemption (b)(5): Privileged Information</u>

Exemption (b)(5) of the FOIA ["Exemption 5"] protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exempts from FOIA documents that are "normally privileged in the civil discovery context", including documents subject to the attorney-client and attorney work-product privileges. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 155 (1975).

The only document that Defendant claims is subject to the attorney-client and work product privilege and protected by Exemption 5 is Al-Turki 584. Plaintiff correctly notes, however, that while Defendant asserts that it referred on that document to attorney work product under this category of Exemption 5, this is incorrect. Defendant cited only to category 1 (attorney-client privilege) on this document. Thus, I address only that privilege.

The communication of factual material is protected under Exemption 5 as to the attorney-client privilege if the communication was made by the client in confidence to the attorney and relates to the solicitation of legal advice. *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980); *see also In Re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quotations omitted) (to assert attorney-client privilege, the communication must be "'between a lawyer and client'" and "'must relate to legal advice or strategy sought by the client'" or "'have a tendency to reveal the confidences of the

client.'. .) (quotations omitted).[8]  Attorney-work product is protected under Exemption 5 if the documents were "prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992).  The burden of establishing the applicability of these privileges rests on the party seeking to assert it.  *In Re Grand Jury Proceedings*, 616 F.3d at 1183-84.

Hardy asserts that the FBI protected communications between and among the U.S. Attorney's Office (who represented the Government and the FBI in Plaintiff's criminal case), and which reflect the seeking and providing of legal advice related to Plaintiff's indictment.  (Hardy Decl., ¶ 27.)  Plaintiff admits that these communications were made within the Department of Justice ["DOJ"] (*i.e.*, between the FBI and U.S. Attorney's Office), and thus satisfy Exemption 5's threshold.

Hardy further asserts that communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to the criminal case against Plaintiff.  (Hardy Decl., ¶ 27.)  They are, according to Hardy, part of the government's potential prosecution of Plaintiff in relation to his federal criminal indictment.   (Hardy Decl., ¶ 29.)

Plaintiff admits that the attorney-client privilege has been asserted, but is without sufficient information to admit or deny what the redacted communications reflect and whether the redacted information is protected by the attorney work-product privilege.

---

[8] The information for which the privilege is being asserted must be confidential, as the attorney-client privilege is not applicable when the information has been communicated to third persons.  *Id.* at 1182.

Plaintiff avers, however, that in a criminal case, communications between law enforcement officers (FBI agents) and prosecuting attorneys (U.S. Attorneys) are presumptively discoverable to criminal defendants.  Plaintiff further asserts that these communications are not protected by the attorney-client privilege because the prosecuting attorneys do not have a client; they represent the United States, not the law enforcement agency or their personnel.

Turning to my analysis, Exemption 5 is met, according to Defendant, because Plaintiff was under federal indictment and there was communication between and among the U.S. Attorney's Office and the FBI related to same.  (Hardy Decl., ¶ 27.)  I accord substantial weight to Hardy's determination that the exempted material at issue meets the requirements of the attorney-client privilege and is exempt from release under FOIA because the material was made in confidence, not shared outside of the attorney-client relationship, and made for the purpose of securing legal assistance or advice in relation to the criminal case against Plaintiff.  (*Id.*)  Plaintiff has presented no viable evidence or argument to suggest that Hardy's representations in his Declaration should not be accepted.  Moreover, he has not presented facts showing a genuine issue of material fact as to the withholding of the document at issue under Exemption 5 and the attorney-client privilege.

To the extent Plaintiff asserts that the attorney-client privilege is not applicable because the prosecuting attorneys do not have a client; *i.e.,* that they represent the United States and not law enforcement agency or their personnel, I reject this argument. Government attorneys, including prosecuting attorneys, are protected under Exemption

5.  *See Church of Scientology Intern. v. U.S. Dep't of Justice*, 30 F.3d 224, 236 (1st Cir.

1994); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 113 (D.D.C. 2008); *Lipsey v.

U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, No. 06-423(RBW), 2007 WL

842956, at *4 (D.D.C. March 19, 2007).

Accordingly, I find that Defendant's Motion for Summary Judgment should also

be granted as to the withholding of information in Al-Turki 584 based on Exemption 5.

> d.  <u>Exemptions (b)(6) and (b)(7)(C): Clearly Unwarranted and
> Unwarranted Invasion of Personal Privacy</u>

Exemption (b)(6) ["Exemption 6"] exempts from compelled disclosure information

about individuals in "personnel and medical and similar files" when the disclosure of

such information "would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).  Exemption (b)(7)(C) ["Exemption 7(C)"] "exempts records or

information compiled for law enforcement purposes, but only to the extent that the

production of such law enforcement records or information could . . .  reasonably be

expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(7)(C).

As to Exemption 6, while "Congressional concern for the protection of the kind of

confidential personal data usually included in a personnel file is abundantly clear", it

does not create a blanket exception for personnel or similar files.  *Dep't of Air Force v.

Rose*, 425 U.S. 352, 371-72 (1976).  Instead, the exemption requires an agency to

balance an individual's right to privacy against the public's interest in disclosure.  *Id.*

The agency must determine whether disclosure of the information would threaten a

protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is contribut[ing] significantly to public understanding *of the operations or activities of the government.*" *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (emphasis in original)). The requester bears the burden of demonstrating that the release of the withheld information would serve this interest. *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391-92 & nn. 8 & 13 (D.C. Cir. 1987).

The legislative history shows that Congress's primary purpose in enacting Exemption 6 "was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). Thus, the term "similar files" relevant to the exemption is to be interpreted broadly. *Id.* at 600. The Supreme Court stated that it did "not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. *Id.* at 602. "Rather, '[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* (quotation omitted).

"[T]he privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same," although Exemption 7(C) is broader. *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004); *Reporters Comm.*, 489 U.S. at 756. According to the Supreme

Court, "Exemption 7(C)'s comparative breadth is not mere accident in drafting", and

Congress gave special consideration to the language in this exemption as a result of

specific amendments to an existing statute.  *Nat'l Archive & Records Admin. v. Favish*,

541 U.S. 157, 165-66 (2004).  The Court explained:

> Law enforcement documents obtained by Government investigators often
> contain information about persons interviewed as witnesses or initial
> suspects but whose link to the official inquiry may be the result of mere
> happenstance. There is special reason, therefore, to give protection to this
> intimate personal data, to which the public does not have a general right of
> access in the ordinary course. . . .In th[e] class of cases where the subject of
> the documents "is a private citizen," "the privacy interest ... is at its apex." .
> . .

*Id*. at 166 (internal quotations omitted).

By affording this additional protection, Exemption 7(C) recognizes the "'strong

interest'" that "'suspects, witnesses, or investigators'" have "'in not being associated

unwarrantedly with alleged criminal activity.'"  *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C.

Cir. 2000) (quotation omitted).  The *Mays* court explained as to this exemption:

> When information withheld by the Government implicates this interest, it
> becomes necessary to determine whether disclosure is warranted by
> "balanc[ing] the public interest in disclosure against the interest Congress
> intended the Exemption to protect.". . . Because the FOIA is concerned with
> the right of the general public to know what their government is up to, the
> identity and interest of the party requesting the document are irrelevant to
> this balancing.  .  .  .  Absent exceptional circumstances, the balance
> categorically favors withholding the names and addresses of third parties as
> "the type of information sought is simply not very probative of an agency's
> behavior or performance."

*Id*. at 1327 (quotations omitted).  Due to that heightened privacy protection, courts have

recognized that information may be categorically withheld under Exemption 7(C).  *See*

*Reporters Comm.*, 489 U.S. at 776; *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206

(D.C. Cir. 1991); *see also Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 13

(D.D.C. 2007).

A three-part test is used "to determine if information is covered by Exemption

7(C)." *World Pub. Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 827 (10th Cir. 2012).  "A

court must (1) determine if the information was gathered for a law enforcement purpose;

(2) determine whether there is a personal privacy interest at stake; and if there is (3)

balance the privacy interest against the public interest in disclosure."  *Id.*

I address the facts and analysis as to Exemptions 6 and 7(C) in connection with

the specific categories presented by Defendant.

        i.      <u>Names and/or Identifying Information Concerning FBI<br>Special Agents and Support Personnel</u>[9]

Defendant asserts that Exemptions 6 and (7)(C) have been cited on the

following pages to protect the names and identifying information concerning FBI Special

Agents ["SAs"] and support personnel:  Al-Turki-144-8; 160-1; 165; 167-70; 178-88;

190; 193; 197-8; 233-5; 239; 256; 332; 335; 340-1; 344; 347; 409-11; 414-6; 422-3; 425;

427; 430; 433-6; 443; 447; 449-65; 467; 469-70; 472; 474-80; 483-6; 488-96; 498-500;

502; 505; 510-24; 526-9; 531-6; 538-40; 544; 546-7; 553; 558; 561-2; 565-6; 570-1;

573; 576; 578; 581; 584; 592-4; 602-7; 609; 612; 645; 647; 665; 669; 684; 688-9; and

722-4.  (Hardy Decl., ¶ 34).  Plaintiff correctly points out that Exemptions 6 and (7)(C)

are not cited on page Al-Turki 410; thus, I do not address the admissibility of this

document in this category.  It is, however, addressed in connection with other

---

[9] This is referred to by Defendant as Category (b)(6)-1 and (b)(7)(C)-1.  (Hardy Decl., ¶ 9.)  I will
refer to it as category 1 under Exemptions 6 and 7(C).

exemptions, including (b)(7)(A), (b)(7)(D)-3, and (b)(7)(E)-1, *infra*. Plaintiff admits that Exemptions 6 and 7(C) are cited on the rest of the listed pages, and asserts that they are also cited on Al-Turki 353, 355-65, 972-73, and 412.

Turning to the facts relevant to this category, Defendant asserts that the FBI SAs are responsible for conducting, supervising, and/or maintaining the investigative activities in this pending investigation and related investigation(s).  (Hardy Decl., ¶ 32.) These responsibilities included conducting interviews and compiling information, as well as reporting on the status of investigation(s).  (*Id.*)  Plaintiff is without sufficient information to admit or deny what various FBI SAs are responsible for.  The one exception Plaintiff notes is that FBI SAs also write reports that are discoverable to criminal Defendants and FBI SAs frequently testify in public hearings and public trials.

Assignments of SAs to any particular investigation are not by choice.  (Hardy Decl., ¶ 32.)  Hardy asserts that publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigation(s).  (*Id.*)  The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigation(s), whether or not they are currently employed by the FBI.  (*Id.*)  Plaintiff is without sufficient information to admit or deny the representations of Hardy in this paragraph, but reiterates that SAs, such as the ones involved in Plaintiff's criminal cases, frequently testify in open, public hearings and trials and therefore may not have a legitimate expectation of privacy with regard to their identity and role in a given criminal case.

Hardy asserts that FBI SAs conduct official inquiries into various criminal and national security violation cases.  (Hardy Decl., ¶ 32.)  They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives.  (*Id.*)  It is possible, according to Hardy, for an individual targeted by such law enforcement actions to carry a grudge which may last for years.  (*Id.*)  Hardy states that these individuals may seek revenge on the agents and other federal employees involved in a particular investigation.  (*Id.*)  Further, he asserts that the publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent.  (*Id.*)

Hardy also notes that the identities of FBI support employees were withheld under these exemptions.  He states that support personnel are assigned to handle tasks related to the inquiry into the allegations made against the Plaintiff as reflected in the documents responsive to his request.  (Hardy Decl., ¶ 33.)  These individuals are in positions of access to information regarding official law enforcement investigation(s), counter-terrorism and national security investigation(s).  (*Id.*)  Thus, they could become targets of harassing inquiries for unauthorized access to FBI investigation(s) if their identities were released.  (*Id.*)  Accordingly, Hardy states that FBI support personnel have personal privacy interests in not having their identities disclosed.  (*Id.*)

The FBI examined the documents containing the names and identifying information of FBI SAs and support personnel to determine whether there was any public interest that outweighed the substantial privacy interests at stake.  (Hardy Decl.,

¶ 34.)  The FBI could identify no discernible public interest in the disclosure of the names and identifying information of FBI SAs and support personnel because it would not shed light on the operations and activities of the FBI.  (*Id.*, ¶¶ 32, 34.)  Thus, the FBI determined that the privacy interests of the SAs and support personnel outweighed any public interest in disclosure, and that disclosure of the names and identifying information of the FBI SAs and support personnel would constitute a clearly unwarranted and unwarranted invasion of person privacy.  (*Id.*)

Plaintiff is without sufficient knowledge or information to admit or deny Hardy's assertions discussed above.  He does not make any argument or state any facts which refute Hardy's statements and assertions as to why the documents were withheld pursuant to the exemption.  Nor does he present any evidence of bad faith.  In the absence of any conflicting evidence, I give credence to Hardy's statements that the documents, if produced, would constitute a clearly unwarranted invasion of personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy as to FBI SAs and support personnel.  Certainly, "law enforcement personnel", including FBI employees and SAs, "'have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.'"  *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 96 (D.D.C. 2009) (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.3d 472, 487 (D.C. Cir. 1980)).

I also give credence to Defendant's balancing of the private interest of the FBI SAs and their support staff with the public interest in disclosure.  Plaintiff has not

demonstrated or even argued that the release of the withheld information "would serve the 'core purpose of FOIA'", *i.e.,* contributing to public understanding of the operations or activities of the government." *U.S. Dep't of Defense*, 510 U.S. at 495.  Thus, he has not shown a public interest in disclosure.  In short, I find that the FBI's decision to withhold names of FBI SAs and support staff is "amply supported".  *Amuso*, 600 F. Supp. 2d at 97.  Plaintiff has not presented specific facts to create a genuine issue of material fact as to Defendant's withholding of documents/information under these exemptions.

Plaintiff's only argument as to the documents withheld under this category is that the FBI waived protection of this information by producing the unredacted names of SAs.  (*See, e.g,* Ex. 3 at 1, 2 and 3; ECF No. 28-6.)  Plaintiff asserts upon information and belief that all involved FBI SAs publicly testified multiple times publicly discussing their identities and roles in Plaintiff's criminal cases.  Thus, he argues that Defendant waived reliance on the exemptions in regard to this category.  I reject this argument.

It is true that voluntary disclosure of information may waive an otherwise valid FOIA exemption.  *Mehl v. U.S. Envtl. Protection Agency*, 797 F. Supp. 43, 47 (D.D.C. 1992.)  Moreover, under the public-domain doctrine, "materials normally immunized from disclosure under FOIA" may 'lose their protective cloak once disclosed and preserved in a permanent public record.'"  *Johnson v. FBI*, 118 F. Supp. 3d 784, 795 (E. D. Pa. 2015) (quotation omitted).  However, I find no waiver in this case.

First, as pointed out by Defendant, the cases relied on by Plaintiff involved waiver of governmental, not private interests.  Plaintiff cites no authority for the proposition that

the government can waive a private interest protected by FOIA such as those established here.  The rule argued by Plaintiff ignores the fact that the privacy interests protected by Exemptions 6 and 7(C) can be overcome only if Plaintiff shows a public interest that outweighs the private interest, which Plaintiff has not done.  As the *Amuso* court explained, "[t]he release of information to plaintiff about third parties in any other context is not relevant" because "[t]he sole rationale supporting release of information otherwise protected under Exemption 6 is a legitimate public interest".  600 F. Supp. 2d at 93 (citing *Schiffer v. FBI*, 78 F.3d 1405, 1411 (9th Cir. 1996)).

Moreover, even if the government could waive the private interest involved in the documents at issue, Defendant has shown that the documents/information it withheld in connection with this category are different from the unsealed affidavits, search warrants and other documents Plaintiff relies on to assert a waiver.  Indeed, the documents Plaintiff relies on to assert waiver in the other categories discussed below are also different than the documents that Defendant withheld.[10]  I find that the release of certain documents—here the unsealed affidavits and similar documents relied on by Plaintiff —does not waive the government's right to raise exemptions as to other documents. *Mobil Oil Corp. v. U.S. Envtl. Protection Agency*, 879 F.2d 698, 700 (9th Cir. 1989) (citing cases); *see also Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1245 (D.C. Cir. 2011); *Fla. House of Representatives v. U.S. Dept. of Commerce*, 961 F.2d 941, 947 (11th Cir. 1992).

---

[10] *See* ECF No. 36-3, Exhibit 6 to Reply Brief entitled "Contexts of disclosures Plaintiff claims establish waiver".

As the Ninth Circuit stated, when "[t]here is no evidence in the record that the documents that are the subject of [the] appeal were ever revealed ..., [i]mplying a waiver of exemption for these documents based on the release of related documents ... would be contrary both to the case law on waiver and to the policies underlying FOIA and its exemptions." *Mobil Oil Corp.*, 879 F.2d at 700.  This makes particular sense in the context of Exemptions 6 and 7(C), which involve significant privacy interests.

Based on the foregoing, I find that Defendant's Motion for Summary Judgment should be granted as to the withholding of information regarding FBI SAs and their support personnel under category 1 of Exemptions 6 and 7(C).

ii.   Re Names and/or Identifying Information of Third Parties of Investigative Interest[11]

Hardy asserts that Defendant withheld under this category the redacted information in Al-Turki 331 (Hardy Decl., ¶ 35 n. 19.)  Plaintiff denies that these exemptions are cited on Al-Turki 331.  While I note that Exemptions 6 and 7(c) are cited on that page, I agree with Plaintiff that Defendant does not cite the exemptions in regard to this specific category (category 2).  Instead, Al-Turki 331 refers only to categories 3 (names/identifying information regarding a third party) and 5 (names/ identifying information of non-FBI federal, state, and local government law enforcement personnel). Thus, I deny Defendant's Motion for Summary Judgment as moot as to this category, and address Al-Turki 331 in connection with other categories where it is cited.

---

[11] This is referred to by Defendant as Category (b)(6)-2 and (b)(7)(C)-2.  (Hardy Decl., ¶ 9.)  I will refer to this as category 2 of Exemptions 6 and 7(C).

iii.   Names and/or Identifying Information Regarding a
Third Party[12]

Exemptions 6 and 7(C) have been cited on the following pages to protect the

names and identifying information of third-party individuals:  Al-Turki-144; 146; 158-9;

161-6; 168-9; 177-90; 194; 196; 198; 332-43; 345-9; 351-3; 355-6; 358-9; 361-71; 373;

411-2; 414; 416-24; 426; 428-32; 436-9; 441; 472; 474; 476-84; 486-555; 557-63; 564;

565-72; 580; 582; 611; 669; 684-5; and 687-8.  (Hardy Decl., ¶ 36 n. 20.)[13]  Additionally,

Plaintiff notes that these two exemptions are cited on Al-Turki 425, 427, 433, 447, 449,

465-70, and 689-90.  (*See* Ex. 8.)  Plaintiff correctly points out, however, that

Exemptions 6 and (7)(C) were not cited on page Al-Turki 688 as to this category.  I

address this document at the conclusion of this section.  I now turn to the other

documents at issue in this category.

Hardy asserts that Exemptions 6 and 7(c) have been asserted to protect the

names and identifying information of third-party individuals.  (Hardy Decl., ¶ 36.)

Identifying information withheld concerning these third parties includes names,

addresses, dates of birth, social security numbers, and other personal identifying

information.  (*Id.*)  Plaintiff is without sufficient information to admit or deny this.

Hardy also asserts that being linked with any law enforcement investigation

carries a strong negative connotation and a stigma.  (Hardy Decl., ¶ 36.)  Release of the

---

[12] This is referred to by Defendant as Category (b)(6)-3 and (b)(7)(C)-3.  (Hardy Decl., ¶ 9.)  I will refer to this as category 3 of Exemptions 6 and 7(C).

[13] Defendant stated in its reply that in Al-Turki 414, it inadvertently coded an exemption as (b)(7)(D)-3, 8 that should have been coded as (b)(7)(C)-3, 8.  Defendant further stated that it was going to provide Plaintiff with a corrected page Al-Turki 414.  There has been no objection to this by Plaintiff, and I therefore include Al-Turki 414 in this category.

identities of these individuals to the public could subject them to harassment or embarrassment as well as undue public attention.  (*Id.*)  Accordingly, Hardy states that Defendant has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.  (*Id.*)

Plaintiff denies Hardy's assertion that disclosure of this information would allegedly subject the individuals to harassment or embarrassment, noting that the names of some of these individuals were already released, unredacted, in response to this lawsuit.  Plaintiff also asserts that among other information improperly redacted on this basis, Defendant has inexplicably utilized Exemptions 6 and (7)(C) to redact Plaintiff's name and personal information.  (Exs. 4, 5.)

In making a determination whether to release the names and personal information concerning these third parties, Hardy states that the public's interest in disclosure was balanced against these individuals' right to privacy.  (Hardy Decl., ¶ 36.)  The FBI determined that this information would not enlighten the public on how the FBI conducts its internal operations and investigation(s).  (*Id.*)[14]  Accordingly, the FBI concluded that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of the third parties' personal privacy.  (*Id.*)  Plaintiff notes in response that based on the nature and number of names redacted it appears, based on the record, that the FBI performed a perfunctory redaction of names, without a particularized balancing of interests.  This is, however, mere unsupported opinion.

---

[14] Plaintiff admits that the FBI made this determination, but is without sufficient information to admit or deny that it is accurate.

Moreover, Plaintiff denies that the disclosure of this information would constitute a clearly unwarranted and/or unwarranted invasion of the individuals' privacy, pointing out as discussed previously that identities of some third parties were released, unredacted, in response to this lawsuit.

I find that Defendant has met its burden of showing the applicability of Exemptions 6 and 7(C) with respect to the documents/information relating to third parties in this category (again with the exception of Al-Turki 688, discussed below). First, the privacy interests of these third parties has been shown through Hardy's Declaration. Third parties referenced in FBI documents have a "strong interest" in not having their names and information revealed, "even if they are not the subject of the investigation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990); *see also Amuso*, 600 F. Supp. 2d at 96 ("'third parties who may be mentioned in investigatory files have an obvious and substantial privacy interest in their personal information'") (quotation and internal quotation marks omitted). Moreover, as referenced above, Hardy has shown that the FBI balanced these private interests against the public interest and found that this information would not enlighten the public on how the FBI conducts its internal operations and investigations. While Plaintiff denies this, he does not demonstrate or even argue that the release of the withheld information in this category would shed light on government activity. Indeed, he has not articulated any public interest that outweighs the privacy interests of the third parties whose information was withheld. This is important because "[a]bsent exceptional circumstances, the balance

categorically favors withholding the names and addresses of third parties. . . ." *Mays,*
234 F.3d at 1327.

Plaintiff's only argument as to why Defendant's summary judgment motion
should be denied as to the documents in this category (other than Al-Turki 688) is that
Defendant waived the right to rely on the exemptions at issue by releasing the names of
some of the third party names in response to this lawsuit.   Thus, he cites ECF No. 28-6
at 5—naming Sitizulaikah Alib and Sarah Khonaizan; ECF No. 28-6 at 6—naming
Bandar Al-Rajhi, Sarah Khonaizan, Bader Al-Turki, Abdullah Al-Turki; ECF No. 28-6 at
8—naming Michael Scholle, Sitizulaikah Alib, and Sara [sic] Khonaizan; and ECF No.
28-6 at 9—naming Mustapha White.  Additionally, he states that on page Al-Turki 340,
Defendant redacted the following sentence: "That [redacted] said she met Al-Turki while
working on a committee for the Crescent View Academy."  (Ex. 6.)  On page Al-Turki
224; however, Defendant produced the identical information, unredacted: "Michelle
Hernandez has provided the following information to federal agents and to the Aurora
Police Department in a videotaped interview: (a) She met Al-Turki while working on a
committee for the Crescent View Academy."  (Ex. 7.)

I reject Plaintiff's waiver argument for the same reasons discussed above in
connection with the FBI SAs and their support personnel.  First, Plaintiff cites no
authority for the proposition that the government can waive the private interests
protected by FOIA, and Defendant has established that the documents at issue involve
private interests the production of which would involve a clearly unwarranted and/or
unwarranted invasion of privacy.  Plaintiff has not identified any pubic interest that would

outweigh that public interest.  Moreover, the fact that some third party names may have been released in connection with certain documents such as unsealed search warrants and affidavits in support of such warrants does not waive the government's right to rely on exemptions in other documents where third party names are referenced.  *See, e.g., Mobil Oil Corp.*, 879 F.2d at 700.

Based on the foregoing, I find that Defendant's Motion for Summary Judgment should be granted to the extent information was withheld under category 3 of Exemptions 6 and 7(C) as to all the documents at issue except Al-Turki 688.

As to the information withheld under this category in Al-Turki 688, I deny Defendant's Motion for Summary Judgment without prejudice.  As noted previously, Defendant did not cite to category 3 of Exemptions 6 and 7(C) on that page.  While I held that information was properly withheld in this document related to FBI SAs and support personnel in Section III.C.1.d.i, *supra*, that holding would not protect information about third parties.  I do not have sufficient information to determine whether there is information in this document that should be disclosed.  "FOIA specifically requires that, if a requested record contains information that is exempt from disclosure under one of the FOIA exemptions, '[a]ny segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'"  *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (quoting 5 U.S.C.§ 552(b)).  Thus, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'"  *Id.* (quotation omitted).  Moreover, if this document does contain names and/or identifying information

regarding a third party and Defendant erred in not citing to Exemptions 6 and 7(C) with

respect to this category, I believe Defendant should be allowed to address this.

Accordingly, Defendant is directed to address these issues in a supplemental

declaration.

iv.   <u>Names and/or Identifying Information of Non-FBI Federal, State, and Local Government and Law Enforcement Personnel</u>[15]

Exemptions (6) and (7)(C) have also been asserted to protect the names and/or

identifying information of non-FBI federal, state, and local government and law

enforcement personnel whose names appear on the following pages: Al-Turki-162; 165;

170; 182; 196; 331-2; 342-4; 354-6; 359; 365; 373; 411; 414; 425; 444-6; 467; 469-70;

475-83; 486-8; 490-3; 497-510; 514-7; 519-20; 522-3; 525-43; 546-7; 561; 571; 580;

590; 592-3; 596; 605-6; 611; and 687.  (Hardy Decl., ¶¶ 37, 38 n. 21.)  While Defendant

also cited to Al-Turki 372, Plaintiff points out that Exemptions 6 and (7)(C) are not cited

on that page in reference to this specific category.  I address this document separately

at the conclusion of this section.

Turning to the other documents cited in this category, Hardy asserts that the non-

FBI government and law enforcement personnel identified in these documents were

acting in their official capacities and aided the FBI in the law enforcement investigative

activities reflected in these records.  (Hardy Decl., ¶ 37.)  He further asserts that

disclosure of their identities and identifying information could subject them to

---

[15] This is referred to by Defendant as Category (b)(6)-4/-5 and (b)(7)(C)-4/-5.  (Hardy Decl., ¶ 9.)  I will refer to this as category 4/5 of Exemptions 6 and 7(C).

unauthorized inquiries and harassment that would constitute a clearly unwarranted invasion of their personal privacy.  (*Id.*)  The rationale for protecting non-FBI federal employees is the same as that for FBI employees.  (*Id.*)

After identifying the substantial privacy interests of non-FBI federal employees, the FBI balanced those interests against the public interest in disclosure.  (Hardy Decl., ¶ 38.)  Hardy states that the FBI could identify no discernible public interest in disclosure of the names and/or identifying information of these individuals as it would  not shed light on the operations and activities of the FBI.  (*Id.*)  Accordingly, he asserts that the FBI determined that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of personal privacy.  (*Id.*)[16]

Plaintiff has not provided any evidence to counter the above assertions or asserted bad faith.  His only argument as to why summary judgment should not enter regarding the information withheld in this category is that Defendant has not offered a rationale for protecting state and local law enforcement personnel, and that Defendant has thus "not even come close to meeting its burden to establish that it is entitled to summary judgment with respect to its redaction of state and local law enforcement names."  (Pl.'s Resp. at 42.)  I disagree.

Defendant explained that the state and local law enforcement personnel, as well as the non-FBI federal law enforcement personnel, were acting in their official capacities when they aided the FBI and that disclosure of their identities could subject them to

---

[16] Plaintiff admits that the FBI made that determination, but is without sufficient information to admit or deny the other allegations in this paragraph.

unauthorized inquiries and harassment that would constitute a clearly unwarranted invasion of their personal privacy.  *See Amuso*, 600 F. Supp. 2d at 96.  Plaintiff has not refuted that or presented any evidence to the contrary.  Moreover, state and other law enforcement personnel who are involved in FBI investigations would, as with any person, "have a substantial interest in seeing that their participation remains secret." *Fitzgibbon*, 911 F.2d at 767.  Defendant has shown a private interest regarding the names and identifying information of state, local and other law enforcement personnel and that the FBI balanced the private interest against the public interest in disclosure and found no ascertainable public interest.  While Hardy referenced only non-FBI federal employees in connection with this balancing, Plaintiff did not identify any public interest that would justify disclosure of this information as to other law enforcement personnel.  Accordingly, I find that the substantial private interests involved outweigh any public benefit from disclosure of the information.

Based on the foregoing, I find that Defendant's Motion for Summary Judgment should be granted to the extent Defendant withheld documents and/or information relevant to category 4/5, with the exception of Al-Turki 372 where Defendant did not cite to this category.

As to Al-Turki 372, it does not appear that the document would be covered under category 4/5, as it does not reference non-FBI federal, state or local law enforcement personnel.  Instead, the document redacts information related to a Singapore

LEGATE.[17]  While I find in Section III.C.1.e, *infra*, that this document was properly

withheld under Exemption 7(A), I am unable to determine whether there are segregable

portions of this document that should be disclosed despite the applicability of this

exemption.  Accordingly, I deny without prejudice Defendant's Motion for Summary

Judgment as to Al-Turki 372, and order that Defendant file a supplemental declaration

addressing this issue.

v.   Names and/or Identifying Information Concerning
Third Parties Merely Mentioned[18]

Plaintiff does not dispute that Exemptions 6 and 7(C) were asserted to withhold

the names and/or identifying information of third parties merely mentioned in the

responsive records subject to FOIA.  These exemptions were asserted on the following

pages: Al-Turki-178-8; 190; 236-7; 257; 332; 338; 341; 344; 349-50; 353; 409; 420; 426;

434; 438; 445; 453-4; 457-61; 463; 466-7; 470-3; 475; 494-5; 505; 524; 529; 531; 547-8;

554-9; 561; 566; 646; 661; 723; and 725-6.  (Hardy Decl., ¶ 40 n. 22.)  Plaintiff

denies, however, that this list is exhaustive, and notes that these two exemptions are

also cited on Al-Turki 425.

According to Hardy, these individuals are not of investigative interest to the FBI.

(Hardy Decl., ¶ 39.)[19]  Hardy asserts that release of this type of information about

private citizens, without notarized authorizations permitting such a release, violates their

---

[17] To the extent the document has redacted information regarding FBI SAs, however, I previously found that this information was properly withheld under category 1 of Exemptions 6 and 7(C).

[18] This is referred to by Defendant as Category (b)(6)-6 and (b)(7)(C)-6.  (Hardy Decl., ¶ 9.)  I will refer to it as category 6 of Exemptions 6 and 7(C).

[19] Plaintiff is without sufficient information to admit or deny this.

individual privacy interests.  (*Id.*)   Plaintiff denies this, stating that Defendant has released at least some of this information, unredacted, in response to this lawsuit.

Hardy also asserts that the FBI examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the third parties merely mentioned in the responsive records subject to FOIA.  (Hardy Decl., ¶ 40.)  The FBI could not identify any discernible public interest.  (*Id.*)  In particular, the FBI could not determine how the disclosure of the names and/or identifying information of these individuals would shed any light on the operations and activities of the FBI.  (*Id.*)[20]

Thus, according to Hardy, the FBI determined that these individuals' privacy interests substantially outweighed any public interest in disclosure, and that disclosure of the names and/or identifying information of third parties merely mentioned in FBI criminal investigation files would constitute a clearly unwarranted and unwarranted invasion of privacy.  (Hardy Decl., ¶ 40.)  Plaintiff denies this, asserting that Defendant has released this information in response to this lawsuit.

Turning to my analysis, I find that Hardy has clearly articulated the private interest at stake.  Indeed, Plaintiff admits that if the FBI disclosed the names and/or other personal information at issue in this category, disclosure would reveal that they were at one time connected with an FBI investigation in some way.  While Plaintiff denies Hardy's assertion that disclosure of their identities could subject them to possible harassment or criticism and/or focus derogatory inferences and suspicion on them, his

_____

[20] Plaintiff is without sufficient information to admit or deny these assertions.

only basis for the denial is that Defendant released this information in response to this lawsuit.  I reject this argument for the reasons discussed below.

I also give credence to the FBI's balancing test and its assertion that the FBI could not find any discernable public interest.  Plaintiff has not articulated any public interest in connection with disclosure of the redacted information in this category.  Moreover, Plaintiff has not presented any evidence that refutes Hardy's Declaration on this issue, or presented evidence of bad faith.  And as noted previously, "[a]bsent exceptional circumstances, the balance categorically favors withholding the names and addresses of third parties. . . ."  *Mays,* 234 F.3d at 1327.

I now turn to Plaintiff's argument that Defendant waived the right to rely on the exemptions at issue through disclosing at least some of the information, unredacted, in response to this lawsuit.  He asserts, for example, that on Al-Turki 344 and 353, Defendant redacted the name of the doctor who performed a medical examination at Planned Parenthood of the Rocky Mountains.  (Ex. 9.)  On Al-Turki 226, however, Defendant produced identical information, unredacted: "A medical examination conducted at Planned Parenthood of the Rocky Mountains on April 30, 2005 by Dr. Savita Ginde confirmed [an anatomical fact about Alib]."  (Ex. 10.)  I reject this argument for the same reasons discussed previously in connection with section III.C.1.d.i and iv, *supra*.  Among other things, the fact that information may have been disclosed in connection with an affidavit in support of a search warrant does not mean that the government waived the private interests at issue in other documents.  *See, e.g., Mobil Oil Corp.*, 879 F.2d at 700.

Based on the foregoing, I find that Defendant's Motion for Summary Judgment should be granted to the extent information was withheld under category 6 of Exemptions 6 and 7(C).

vi.    Names and/or Identifying Information of Third Parties
Who Provided Information to the FBI[21]

It is undisputed that Exemptions 6 and 7(C) have been asserted, sometimes in conjunction with 7(D), to protect the names and/or identifying information of individuals who were interviewed during the course of the FBI's criminal investigation of Plaintiff. (Hardy Decl., ¶ 41.)  The exemptions were asserted on the following pages: Al-Turki-195; 198; 233-5; 256; 341; 409; 411-43; 445-6; 465-75; 485; 544-63; 565-70; 603; 607-8; 610; 613; 645; 647; 669; 686; 689; and 722.  (Hardy Decl., ¶ 43 n. 23.)   Plaintiff also notes that these exemptions were cited on Al-Turki 444.  (Ex. 15.)

Defendant asserts that identifying information withheld concerning these third parties may include names, addresses, dates of birth, social security number, and other personal identifying information.   (Hardy Decl., ¶ 41.)  Hardy states that the FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies.  (*Id.*, ¶ 42.)[22]

The largest roadblock to successfully obtaining the desired information through an interview, according to Hardy, is fear by the interviewee that their identity will possibly be exposed and consequently they could be harassed, intimidated, or

---

[21] This is referred to by Defendant as Category (b)(6)-7 and (b)(7)(C)-7.  (Hardy Decl., ¶ 9.)  I will refer to it as category 7 of Exemptions 6 and 7(C).

[22] Plaintiff is without sufficient information to admit or deny this.

threatened with legal action, economic reprisal, possible physical harm, or even death. (Hardy Decl., ¶ 42.)  To surmount these obstacles, persons interviewed by the FBI must be assured that their names and identifying information will be held in the strictest confidence.  (*Id.*)  Hardy asserts that the continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the Plaintiff might derive from being furnished the names of those who cooperated with the FBI.  (*Id.*)  Thus, the FBI has determined that third parties who provided information to it maintain a substantial privacy interest in not having their identities disclosed.  (*Id.*)   Plaintiff denies these assertions, noting that Defendant has produced the names of third parties who provided information, unredacted, in response to this lawsuit.

Hardy asserts that after identifying the substantial privacy interests of the third parties, the FBI balanced their right to privacy against the public interest in the disclosure.  (Hardy Decl., ¶ 43.)  The FBI could identify no discernible public interest in the disclosure of this information, as disclosure of the third parties' names and identifying information would not shed light on the operations and activities of the FBI. (*Id.*)[23]  Accordingly, Hardy states that the FBI concluded that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of the third parties' personal privacy.  (*Id.*)  Plaintiff denies this last assertion, pointing to the fact that Defendant has produced the names of third parties who provided information, unredacted, in response to this lawsuit as discussed in the previous paragraph.

_____

[23] Plaintiff is without sufficient information to admit or deny this.

Thus, Plaintiff's only argument in connection with Defendant's withholding of the information at issue in this category is that Defendant waived the right to be able to rely on the exemptions to withhold the material by producing the names of third parties who provided information, unredacted, in response to this lawsuit.  For example, on Al-Turki 412, an interview report dated November 19, 2004, Defendant has redacted the name of the individual who provided the following information: "[Redacted] has been aware for over two years that [redacted] is illegally in the United States due to her immigration status.  [Redacted] obtained this information that [redacted] is illegally in the United States through conversations he has had with Al-Turki."  (Ex. 12.)  On Al-Turki 219 and 220, however, Defendant has produced the following, unredacted: "Khaled Rasheid was interviewed in November 2004 by myself and other federal agents.  He told us that he had been aware for over two years at the time of the interview that Alib's visa had expired and that she was illegally residing with Al-Turki and Khonaizan in the United States.  According to Rasheid, the source of his information was Al-Turki."  (Ex. 13.)

Similarly, on Al-Turki 429, the following information appears, redacted: "On Friday, December 3, 2004, during the telephone conversation [redacted] had with Al-Turki, Al-Turki told [redacted] that she has misunderstood her monthly compensation arrangement.  Al-Turki told [redacted] that she needs to know that she earns $800 USD. per month.  [Redacted] believes that Al-Turki was telling her this because he was attempting to trick her.  Al-Turki has never told [redacted] this before in the past five years that she has worked for him."  (Ex. 14.)  On Al-Turki 219, however, the same information appears, unredacted: "Alib stated that during a telephone conversation she

-44-

had with Al-Turki on December 3, 2004, after she had been removed from the house,

Al-Turki told Alib that she has always misunderstood her monthly compensation

arrangement and she needs to know that she earns $800 per month.  Alib told the

agents that this was the first time Al-Turki ever mentioned compensation of $800 per

month." (Ex. 13.)

I reject Plaintiff's waiver argument, incorporating my analysis of this issue in

regard to other categories previously discussed in connection with Exemptions 6 and

7(C).  Among other things, the fact that certain information was provided in the types of

documents Plaintiff cites does not mean that the government can waive the private

interests of third parties in other documents.

Based on the foregoing, I grant Defendant's Motion for Summary Judgment to

the extent information was withheld under category 7 of Exemptions 6 and 7(C).

    vii. <u>Names and/or Identifying Information Concerning the Victim</u>[24]

Defendants have asserted Exemptions 6 and 7(C) with respect to individuals who

were Plaintiff's victims on the following pages: Al-Turki-177-90; 333-41; 344-53; 359;

362-3; 366-70; 373; 409; 412-25; 427-43; 446; 453-4; 457-60; 465-7; 469-70; 472-4;

483-7; 491-3; 496-505; 507-8; 510-13; 516-7; 519; 521-3; 525-9; 532-6; 544; 547-62;

and 565-72.  (Hardy Decl., ¶ 44, n. 24.)  Plaintiff also notes that these exemptions are

cited on Al-Turki 444.  (Ex. 15.)  According to Hardy, the video interview of the minor

---

[24] This is referred to by Defendant as Category (b)(6)-8 and (b)(7)(C)-8.  (Hardy Decl., ¶ 9.)  I will refer to it as category 8 of Exemptions 6 and 7(C).

victim was withheld in full under Exemptions 6 and 7(C) in conjunction with Exemption 3 to protect her voice, image, and identifying information.  (Hardy Decl., ¶ 44.)

Hardy asserts that Exemptions 6 and 7(C) have been asserted to protect the identifying information of individuals who were the victim(s) of Plaintiff's crimes.  (Hardy Decl., ¶ 44.)  These criminal acts led to the prosecution, conviction, and incarceration of Plaintiff.  (*Id.*)  Plaintiff denies these allegations, and denies that the individual was a victim, as appeals are still pending in the criminal case.  He avers that the individual referred to is the complaining witness for the offenses for which Plaintiff was prosecuted, convicted and incarcerated in Arapahoe County Case 05CR1571.

Release of this information would, according to Hardy, cause unsolicited and unnecessary attention to be focused on the victim(s), further traumatizing these individuals and their family members.  (Hardy Decl., ¶ 44.)  Thus, he asserts that there is a strong privacy interest in the protection of such information that might lead to their identities.  (*Id.*)  Furthermore, Hardy notes that there is no legitimate public interest to be served in releasing information about the victim(s) because it would not shed light on the operations and activities of the FBI; therefore, disclosure would constitute a clearly unwarranted and unwarranted invasion of personal privacy.  (*Id.*)  Plaintiff denies these allegations, but fails to cite any evidence in support of the denial.

Plaintiff's only argument with respect to this category is that Defendant waived its right to rely on Exemptions 6 and 7(C) because Defendant has produced the same information, unredacted, in response to this lawsuit.  Again, I reject this argument for the same reasons discussed above in regard to other categories relevant to Exemptions 6

and 7(C).  I also note that Plaintiff does not actually cite to any pages where the name

of the alleged victim is used.

Based on the foregoing, I find that Defendant's Motion for Summary Judgment

should be granted to the extent information was withheld under category 8 of

Exemptions 6 and 7(C).

> e.  Exemption (b)(7)(A): Pending Enforcement
>       Proceedings

Exemption (b)(7)(A) ["Exemption 7(A)"] exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to
> the extent that the production of such law enforcement records or information
> (A) could reasonably be expected to interfere with enforcement proceedings
> . . .

5 U.S.C. § 552(b)(7)(A).  Defendant has cited Exemption 7(A) on the following pages:

Al-Turki-192-3; 233-5; 238-9; 256-7; 303; 331; 343; 355-61; 365-6; 372-7; 379; 382;

385-6; 388; 391; 393; 395; 399; 409-75; 485; 544-63; 564; 565-73; 576-8; 597; 601-9;

645; 647; 661; 669; 683-4; 722; and 726.  It has provided further details about the

current status of the ongoing investigation(s), as well as justification for the assertion of

FOIA Exemption 7(A) to prevent from disclosure information pertaining to these ongoing

investigation(s) in the *in camera*, *ex parte* classified Operational Declaration.  (Hardy

Decl., ¶ 48.)

Defendant asserts that the documents responsive to the FOIA request and

subject to FOIA are law enforcement records and relate to active, ongoing

investigation(s).  (Hardy Decl., ¶ 47.)  According to Hardy, the FBI has concluded that

there is information within these records that is intertwined with other ongoing

investigation(s).  (Hardy Decl., ¶ 47.)  Hardy asserts that the FBI determined that

disclosure of this information, in the midst of these active and ongoing investigation(s),

is reasonably expected to interfere with those investigation(s) as well as any resulting

prosecutions.  (Hardy Decl., ¶ 47.)  While it is a little confusing from Defendant's motion

and Hardy's Declaration, since the documents at issue are withheld under Exemption

7(A) in connection with the broad category of documents *not related* to an ongoing

investigation (as compared to Defendant's assertion of Exemption 7(A) with respect to

documents related to an ongoing investigation), I find from Hardy's Declaration that the

documents at issue, while not directly related to an ongoing investigation, contain

information that is intertwined with or related to other ongoing investigations.  Plaintiff

denies that the documents are law enforcement records and relate to active, ongoing

investigations, and denies that they are intertwined with other ongoing investigations.

Turning to my analysis, the Supreme Court has held that "[i]n originally enacting

Exemption 7, Congress recognized that law enforcement agencies had legitimate needs

to keep certain records confidential, lest the agencies be hindered in their investigations

or placed at a disadvantage when it came time to present their case.  *NLRB v. Robbins

Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).  "Foremost among the purposes of this

Exemption was to prevent 'harm [to] the Government's case in court.'"  *Id.* (quotation

omitted).  Exemption 7(A) has two requirements: (1) that the records information be

compiled for law enforcement purposes; and (2) the production of such records or

information could reasonably be expected to interfere with enforcement proceedings.

*See* 5 U.S.C. § 552(b)(7)(A).

As to the first requirement, Exemption 7(A) protects a broad array of information used for law enforcement purposes.  "A record is considered to have been compiled for law enforcement purposes if it was created or acquired in the course of an investigation 'related to the enforcement of federal laws' and 'the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality.'"  *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (quotation omitted).  "'[L]ess exacting proof' of a legitimate law enforcement purpose will be required of law enforcement agencies such as the FBI", but "'the agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable.'"  *Id.* (quotation omitted).

Plaintiff's primary argument as to why he asserts Exemption 7(A) is not applicable is that these documents relate to his federal prosecution that was dismissed ten years ago, and not to an ongoing investigation.  He asserts upon information and belief that the information redacted in the documents where Exemption 7(A) was cited pertain to an enforcement proceeding initiated in 05-CR-00280-WDM in this Court.  (Ex. 16.)  The information pertains to acts that allegedly took place on or about September 10, 2000, and November 18, 2004, involving Plaintiff, his wife, and Plaintiff's former housekeeper.  On motion of the United States, the prosecution was dismissed on October 20, 2006 in that case.  He further states that Defendant has already disclosed to Plaintiff these documents unredacted through discovery in that case and therefore there is no reasonable expectation that release of this information would interfere with

the now terminated investigation.  I reject Plaintiff's argument, as he has not supported this assertion with any evidence.

Instead, Defendant has shown through Hardy's Declarations that it is withholding documents/information on the basis of a *current* investigation.  That investigation is described in the ex parte, *in camera* Declaration that was reviewed by me.  Defendant does admit that some of the information it protected under Exemption 7(A) may stretch back ten years, but Exemption 7(A) has been held to apply to long-term investigations. *See Cook v. U.S. Dep't of Justice*, No. C04-2542L, 2005 WL 2237615, at *2 (W.D. Wash. Sept. 13, 2005) (upholding in 2005 application of Exemption 7(A) to an ongoing FBI investigation as to 1971 airplane hijacking); *see also Nat'l Pub. Radio v. Bell*, 431 F. Supp. 509, 514-15 (D.D.C. 1977) (finding that although Exemption 7(A) does generally not apply to closed investigative file cases, it applied to "dormant" investigation that would "'hopefully lead to a 'prospective law enforcement proceeding'"). I further find Defendant has shown through Hardy's Declarations that the records or information were compiled for law enforcement purposes, and that the production of such records or information could reasonably be expected to interfere with enforcement proceedings.  Plaintiff has not shown that there is a genuine issue of material fact as to these issues.

Accordingly, I find that Defendant has shown that it properly relied on Exemption 7(A) to withhold documents that while not directly related to ongoing investigations, contain information that is intertwined with or related to other ongoing law enforcement

proceedings and could reasonably be expected to interfere with such proceedings.

Defendant's Motion for Summary Judgment is granted as to this issue.

f.    Exemption (b)(7)(D): Confidential Source Information

Exemption (b)(7)(D) ["Exemption 7(D)"] exempts from disclosure:

> records or information complied for law enforcement purposes but only to the extent that the production of such law enforcement records or information. . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . .

5 U.S.C. § 552(b)(7)(D).  Defendant asserts three categories of documents/information

withheld under this exemption.

Before addressing the specific categories, I first note as to this exemption that

according to Hardy, numerous confidential sources report to the FBI on a regular basis

and are "informants" within the common meaning of the term.  (Hardy Decl., ¶ 50.)

Some of these sources provide information under an express assurance of

confidentiality while others are interviewed under circumstances from which an

assurance of confidentiality can reasonably be inferred.  (*Id.*)  These individuals are

considered to be confidential sources since they furnished information with the

understanding that their identities and the information provided will not be released

outside the FBI.  (*Id.*)  Information provided by these individuals is singular in nature,

and if released, could reveal their identity.  (*Id.*)[25]

---

[25] Plaintiff is without sufficient information to admit or deny these assertions.

During the course of the FBI's investigation(s), Hardy states that FBI SAs have sought and continue to seek the assistance of individuals to obtain information in aid of the investigation(s).  (Hardy Decl., ¶ 51.)  Information has been provided by individuals under both expressed and implied assurances of confidentiality.  (*Id.*)  In response, while Plaintiff is without sufficient information to admit or deny the above assertions, he states upon information and belief that these individuals were never given an explicit or implied promise of confidentiality.  He cites no evidence, however, for this assertion.

The FBI has learned through experience that individuals who assist, cooperate with, and provide information to the FBI must be free to do so without fear of reprisal.  (Hardy Decl., ¶ 52.)  Hardy states that the FBI has also learned that individuals who provide information to it must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information because of fear that their names or their cooperation with the FBI will later be made public.  (*Id.*)[26]

Thus, according to Hardy, individuals who provide information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.  (Hardy Decl., ¶ 52.)  The release of a source's identity would forever eliminate that source as a future means of obtaining information.  (*Id.*)  When the identity of one source is revealed, the revelation has a chilling effect on the activities and cooperation of other sources, not just in that case, but in future cases as well.  (*Id.*)  Plaintiff denies these allegations, asserting again that Defendant has released, in response to this lawsuit, the names of individuals who are confidential sources.

---

[26] Plaintiff is without sufficient information to admit or deny these facts.

I now turn to the specific categories asserted in regard to Exemption 7(D).

> i.    Confidential Source File Number(s) and
>       Identifying Data Concerning Source Symbol
>       Numbered Informants[27]

Exemption 7(D) was asserted as to confidential source file number(s) on Al-Turki 409.  (Hardy Decl., ¶ 55 n. 26.)  According to Hardy, confidential source file numbers are administrative tools that facilitate the retrieval of information supplied by a source. (*Id.*, ¶ 53.)  Similar in usage to the confidential source symbol number discussed below, this confidential source file number is also assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality.  (*Id.*)

Hardy asserts that the confidential source file is unique to the particular confidential informant and is used only in documentation relating to that particular informant.  (Hardy Decl., ¶ 53.)  Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources because it would reveal the connections of confidential informants to the information provided by them. (Hardy Decl., ¶ 54.)  Repeated release of confidential source file numbers along with the information provided by these confidential informants would narrow the possibilities of the informants' true identities.  (*Id.*)  Hardy states this is especially true because each confidential source file number is assigned to only one confidential informant.  (*Id.*) Plaintiff is without sufficient information to admit or deny this.

_____

[27] These are referred to by Defendant as Category (b)(7)(D)-2 and Category (b)(7)(D)-3.  (Hardy Decl., ¶ 9.)  The FBI inadvertently skipped coded category (b)(7)(D)-1.  (*Id.* n. 3.)  I will refer to these as categories 2 and 3 asserted under Exemption 7(D).

Similarly, Defendant asserts that Exemption 7(D) was asserted on Al-Turki 409-10 to withhold information concerning source symbol numbered informants. (Hardy Decl., ¶ 56.)[28]  According to Hardy, the disclosure of this information may likely reveal a confidential source's identity.  (*Id.*)  Hardy states that the disclosure of a source's identity would forever neutralize that source as a future means of obtaining information. (Hardy Decl., ¶ 56.)  Plaintiff denies the latter two assertions, stating upon information and belief that many of the redactions based on Exemption 7(D) pertain to individuals who have been publicly identified by various media sources based on court pleadings, and who testified at Plaintiff's criminal trial under no confidentiality agreement.  (*See* Ex. 19.)

Hardy also asserts that when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. (Hardy Decl., ¶ 56.)  It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence can sources be persuaded to continue providing valuable assistance in the future.  (*Id.*)  Plaintiff denies this, asserting that Defendant has released, in response to this lawsuit, the names of individuals whom it asserts are confidential sources.  He further asserts upon information and belief that the redaction on Al-Turki 409-410 pertains to Michelle Hernandez and Zulaikah Alib.  Neither of these individuals has ever been considered a confidential source, and both have been identified in dozens of documents in the records released herein and in Plaintiff's discovery in his criminal case.

---

[28] Plaintiff is without sufficient information to admit or deny this.

Turning to my analysis, I find that Defendant has shown through Hardy's Declaration that the public disclosure of confidential source file numbers and identifying data concerning source symbol numbered informants could reasonably be expected to disclose the identity of a confidential source.  Once such a showing is made, the withholding of such material may be appropriate under Exemption 7(D).  *See Johnson*, 118 F. Supp. 3d at 799; *Amuso*, 600 F. Supp. 2d at 98-99.  Plaintiff has not contested this.

However, I do not have sufficient information to ascertain whether Plaintiff's arguments that the redactions on the two pertinent pages relate to persons whose identities have already been disclosed and who thus are not or should not be considered confidential sources whose information needs to be protected.  *See Johnson*, 118 F. Supp. 3d at 799 ("to the extent such information may already be in the public domain..., it cannot be withheld [under Exemption 7(D)] because its release would create no additional risk").

Accordingly, I must deny Defendant's Motion for Summary Judgment as to categories 2 and 3 of Exemption 7(D) without prejudice.  Defendant is directed to provide the Court more information on this issue through a supplemental declaration; specifically, Defendant should address Plaintiff's contentions that these individuals have already been publicly disclosed and, if so, how this impacts its ability to rely on Exemption 7(D).

I also recognize that I previously found Defendant properly withheld information in these two documents under Exemptions 6 and 7(C) and 7(A), and also find in section

III.C.1.g, *infra*, that Exemption 7(E) applies to these documents.  Thus, even if

Exemption 7(D) is found not to apply to these two documents, the information may not

need to be produced under the other exemptions.  I am unable, however, to determine

whether there are segregable portions that are not subject to those other exemptions,

and if I find that Exemption 7(D) does not apply, those portions may be discoverable.

*See Johnson*, 118 F. Supp. 3d at 795 (finding that while Exemption 7(A) can be

asserted categorically, the government did not meet its burden on that issue and

applicability of the exemption then depended on 'the subject matter which each

individual record contain,'" and requiring a *Vaughn* index or a more detailed or specific

affidavit to show that the investigative file at issue "does not contain segregable portions

that could be disclosed without risk. . . .") (internal quotation omitted).  Defendant shall

also address this issues in a more detailed declaration or *Vaughn* index.

Based on the foregoing, I deny without prejudice Defendant's Motion for

Summary Judgment as to categories 2 and 3 of Exemption 7(D).  Defendant must

provide additional information before I can make an informed ruling.

      ii.    <u>Names, Identifying Information, and/or Information Provided by Individual(s) Under an Implied Assurance of Confidentiality</u>[29]

Defendant also relies on Exemption 7(D), at times in conjunction with Exemptions

6 and 7(C), to protect the names, identifying information, and information provided by

third parties under circumstances in which confidentiality can be inferred.  (Hardy Decl.,

---

[29] This is referred to by Defendant as Category (b)(7)(D)-4.  (Hardy Decl., ¶ 9.)  I will refer to it as category 4 of Exemption 7(D).

¶ 57.)  This exemption is asserted on the following pages: Al-Turki-365; 411-3; 415-33; 436-43; 469-76; 478-543; 547-62; 564; and 568.  (*Id.* n. 28.)[30]  Plaintiff admits that the exemption was cited on the above pages, but denies that the circumstances lead to an inference of confidentiality.  Upon information and belief, Plaintiff asserts that every person whose name was redacted in these documents testified in public hearings and at a public trial, with no assurance or reasonable belief that their identity would remain confidential.  (*See* Ex 20.)

According to Hardy, these individuals provided information concerning the activities of subjects who were, and some who still are, of investigative interest to the FBI.  (Hardy Decl., ¶ 57.)  They provided valuable and detailed information on persons who are the subject of investigations.  (*Id.*)  He asserts that the information provided by these individuals is similar in nature due to their proximity to certain criminal elements.[31]  Hardy asserts that the preservation of the confidentiality of the identity and information provided by these individuals is essential to effective law enforcement.  (*Id.*)

Turning to my analysis, "[a]n agency claiming the right to decline disclosure on the basis of Exemption 7(D) must demonstrate that the particular document was compiled for 'law enforcement purposes' from information provided by a 'confidential source.'"  *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 563 (1st Cir. 1992).  "A person is a confidential source 'if the person provided information under an

---

[30] Defendant notes in its reply that on Al-Turki 415, it inadvertently coded the applicable exemption as (b)(7)(E) rather than (b)(7)(D)-4.  Defendant stated that it was providing a corrected page 415 to Plaintiff.  I will consider Al-Turki 415 under this exemption, as Plaintiff did not object to Defendant's correction of its error.

[31] Plaintiff is without sufficient information to admit or deny what the individuals told the FBI.

express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Parker v. Dep't of Justice*, 934 F.2d 375, 378 (D.C. Cir. 1991) (quotation omitted); *see also Hale v. U.S. Dep't of Justice,* 99 F.3d 1025, 1030 (10th Cir. 1996).  "Once it has been determined that the information was provided" under the above circumstances, "all the information is exempt." *Brant Constr. Co. v. U.S. Envir. Protection Agency,* 778 F.2d 1258, 1262 (7th Cir. 1985).  "No judicial 'balancing' of the competing interests is permitted; Congress has struck the balance in favor of nondisclosure." *Id.*

To be  deemed confidential under Exemption 7(D), the government must establish on a source-by-source basis that the source furnished information with an understanding that the communication would not be revealed except as necessary for law enforcement.  *Hale*, 99 F.3d at 1030.  Thus, "'[u]nder Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential.'" *Id.* (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original)).

"An inference of implied confidentiality should be evaluated on a case-by-case basis." *Hale*, 99 F.3d at 1030.  Thus, the Supreme Court explained that although "it is unreasonable to infer that all FBI criminal investigative sources are confidential, we expect that the Government often can point to more narrowly defined circumstances that will support the inference." *Landano*, 508 U.S. at 179.  "In describing some 'generic circumstances in which an implied assurance of confidentiality fairly can be inferred,'"

the Supreme Court "'identified two relevant factors for courts to consider, (1) the nature of the crime investigated, and (2) the source's relation to it.'"  *Hale*, 99 F.3d at 1030 (quoting *Landano,* 508 U.S. at 179).  "The Court suggested, as examples not intended to be exclusive, that paid informants and witnesses to violent gang-related crimes may support a presumption of confidentiality."  *Id.* (quoting *id.* at 179–80).  Thus, "[u]nder *Landano,* "courts may look to the risks an informant might face were her identity disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality.'"  *Id.* (quoting *Massey v. F.B.I.*, 3 F.3d 620, 623 (2d Cir.1993)).

Turning to the information withheld under this category, I find that Defendant has shown through Hardy's Declaration that the information was compiled for law enforcement purposes.  This is supported by Hardy's Declaration that during the course of the FBI's investigation(s), FBI SAs have sought and continue to seek the assistance of confidential informants to obtain information in aid of the investigation(s).  (Hardy Decl., ¶ 51.)  Moreover, he noted that these individuals have provided information on persons who are the subject of investigations by the FBI, and that the preservation of the identity and information provided by these individuals is essential to law enforcement.  (*Id.*, ¶ 57.)

Plaintiff argues, however, that Defendant has inadequately supported its reliance on Exemption 7(D) with respect to this category in regard to its assertion of an implied assurance of confidentiality.  While Hardy asserts that information has been provided by these individuals under circumstances in which confidentiality can be inferred (Hardy Decl., ¶ 57), Plaintiff argues that Defendant's proffered support for its reliance on this

-59-

exemption falls far short of what is required and is factually inaccurate.  Thus, Plaintiff argues that summary judgment is not proper.

Plaintiff contends that Defendant's argument for inferred confidentiality asks this Court to presume all information provided to the FBI is provided under an implied assurance of confidentiality.  However, quite to the contrary, it is well established that "the government is not entitled to a presumption that a source is confidential within the meaning of Exemption (7)(D) whenever the source provides information to the FBI in the course of a criminal investigation."  *Landano*, 508 U.S. at 181.  Moreover, in invoking this exception, Plaintiff states that Defendant makes no reference at all to the specific facts of this case.  For example, he points out that Defendant broadly asserts that the individuals have "proximity to criminal elements", that disclosing their identities might lead to unspecified "disastrous consequences," and that "the nature of these investigations" requires an inference of confidentiality.  Plaintiff asserts that blanket assertions such as these are insufficient for the FBI to establish that an assurance of confidentiality.

Plaintiff further argues that despite Defendant's conclusory assertion that "the nature of these investigations" leads to an inference of confidentiality, the crimes for which Plaintiff was indicted in federal court are a far cry from the types of crimes that result in an inference of confidentiality.  Plaintiff was indicted on four counts of non-violent crimes, which he asserts present a starkly different scenario from the dangerous and violent crime investigations that lead to an inference of confidentiality.  *See, e.g.*, *Amuso*, 600 F. Supp. 2d at 99-100 ("[W]here Plaintiff is a member of an organized crime

family who has been convicted of racketeering, extortion and murder, it is reasonable for these sources to fear retaliation if the FBI were to release their names or any other information that might reveal their identities.")  Further, as discussed previously, Plaintiff asserts upon information and belief that every person whose name was redacted testified in public hearings and at a public trial, with no assurance or reasonable belief that their identity would remain confidential.

Turning to my analysis, I agree with Plaintiff that Defendant has not provided adequate information for me to be able to find that Exemption 7(D) applies with respect to the alleged confidential sources at issue in this category.  Thus, Defendant did not provide a source-by-source basis that would allow me to infer that the sources furnished information under circumstances where an implied assurance of confidentiality could be inferred.  While Defendant argues in its reply brief that the nature of Plaintiff's crime allows the court to infer confidentiality, I am unable to make this determination without knowing the sources' relation to the crime and what risks those source(s) might face were his/her identity disclosed.  *See Hale*, 99 F.3d at 1030.  While Defendant has made blanket assertions that these individuals have "proximity to criminal elements" and that disclosing their identities might lead to unspecified "disastrous consequences", there is no explanation as to this.  Moreover, while I previously held that information in these documents was properly withheld under certain categories in Exemptions 6 and 7(C), I am unable to determine whether there are segregable portions of the documents that are not subject to those exemptions.

Accordingly, I also deny without prejudice Defendant's Motion for Summary

Judgment as to category 4 of Exemption 7(D).  Defendant must provide additional

information on these issues through a supplemental declaration or a *Vaughn* index.

> g.   Exemption (b)(7)(E): Investigative Techniques and Procedures

FOIA Exemption (b)(7)(E) ["Exemption 7(E)"] protects from disclosure "records or

information compiled for law enforcement purposes" when production of the records or

information, among other things, . . .would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be

expected to risk circumvention of the law.  5 U.S.C. § 552(b)(7)(E).  According to the

Tenth Circuit, "it is to applied only to the techniques and procedures generally known to

the public."  *Hale v. U.S. Dep't of Justice,* 973 F.2d 894, 902 (10th Cir. 1992), *overruled*

*on other grounds*, 2 F.3d 1055 (1993).

As Defendant notes, courts are divided as to whether the phrase "if such

disclosure could reasonably be expected to risk circumvention of the law" applies only to

"guidelines" or also applies to "techniques and procedures."  *See, e.g., Asian Law*

*Caucus v. Dep't of Homeland Sec.*, No. C 08-00842 CW, 2008 WL 5047839, at *3 (N.D.

Cal. Nov. 24, 2008).  However, I agree with Defendant that the better reasoned

decisions and, it appears, the weight of authority, recognize that providing categorical

protection to "techniques and procedures" (*i.e.*, not requiring a showing that "disclosure

could reasonably be expected to risk circumvention of the law") is consistent with both

the plain meaning of the statute and the history of the amendments to Exemption 7(E) in

1986. *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681

(2d Cir. 2010) (finding that the "sentence structure" of Exemption 7(E) and "basic rules

of grammar and punctuation dictate that the qualifying phrase modifies only the. . .

'guidelines' clause" and that "[a]ny potential ambiguity in the statute's plain meaning is

removed . . . by the history of the statute's amendments"); *Hamdan v. U.S. Dep't of

Justice*, 797 F.3d 759, 778 (9th Cir. 2015) (adopting the *Lowenstein* test); *Electronic

Frontier Found. v. Dep't of Homeland Sec.*, No. C 12-5580 PJH, 2014 WL 1320234, at

*3 (N.D. Cal. March 31, 2014) (same);[32] *cf. Citizens for Responsibility and Ethics in

Washington v. U.S. Dep't of Justice*, No. 13-1159, 2016 WL 541127, at *12 (D.D.C. Feb.

9, 2016) (noting that the District of Columbia Circuit had applied the "'risk circumvention

of the law' requirement to techniques and procedures, as well as guidelines" but without

any discussion of the applicability of the requirement) (citing *Blackwell v. FBI*, 646 F.3d

37, 41-42 (D.C. Cir. 2011)).

I now turn to the specific categories addressed under this exemption.

i.       <u>Sensitive FBI File Numbers</u>[33]

Exemption 7(E) has been cited on the following pages to protect sensitive FBI file

numbers:  Al-Turki-192-3; 233-5; 238-9; 256-7; 303; 331; 343; 355-61; 365-6; 372-7;

379; 382; 385-6; 388; 391; 393; 395; 399; 409-75; 485; 544-63; 465-73; 564; 576-8;

---

[32] *See also, e.g., Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009); *ACLU of Mich. V. FBI*, No. 11-13154, 2012 WL 4513626, at *9 (E.D. Mich. Sept. 30, 2012); *McRae v. Dep't of Justice,* 869 F. Supp. 2d 151, 168 (D.D.C. 2012); *Keys v. DHS,* 510 F. Supp. 2d 121, 129 (D.D.C. 2007).

[33] This is referred to by Defendant as Category (b)(7)(E)-1.  (Hardy Decl., ¶ 9.)  I will refer to it as category 1 of Exemption 7(E).

597; 601-9; 645; 647; 661; 669; 683-4; 722; and 726.  (Hardy  Decl., ¶ 60 n. 30.)

Turning to my analysis regarding this category, Plaintiff has not disputed, and I find from

the record, that the information in this category was compiled for law enforcement

purposes.  (*See* Hardy Decl., ¶ 60, noting that these file numbers often contain a 3-digit

file classification number which indicate the type of investigative/intelligence gathering

programs to which these files pertain).  Moreover, Hardy has declared that these

sensitive file numbers are not known to the general public.  (*Id.*)  Thus, I must determine

whether production of the records or information "would disclose techniques and

procedures for law enforcement investigations or prosecutions."  Plaintiff has not

addressed or disputed this issue.

I find that the disclosure of sensitive FBI file numbers could disclose techniques

or procedures for law enforcement investigations.  Specifically, I believe that the

assignment of sensitive file numbers could be characterized as a procedure that the FBI

uses for investigative purposes.  Moreover, Hardy asserts that the nature of the file

numbers often reveals the size and scope of the files, thus revealing the scope and size

of the programs to which these files relate.  (Hardy Decl., ¶ 60.)  He states that

releasing sensitive file numbers within the context of this investigative file would reveal

the type of investigation and allow criminals to understand the level of focus the FBI is

applying to certain types of criminal activity and how the FBI is allocating its limited

resources.  Further, it would reveal the specific types of investigations and intelligence

gathering efforts in which the FBI utilizes certain investigative techniques.  (*Id.*)  This

would allow criminals to structure their activities in a manner which avoids the FBI's

strengths and exploits its weakness.  (*Id.*)  While Plaintiff either denies or is without

sufficient information to admit or deny the above assertions, he does not cite any

evidence or basis for me to reject Hardy's assertions.  Thus, I accept Hardy's

Declaration on this issue for purposes of summary  judgment.

Hardy also states that releasing this information would forewarn criminals as to

how the FBI will attempt to detect and/or disrupt their criminal activities through the use

of particular investigative techniques.  (Hardy Decl., ¶ 60.)  Armed with this information,

criminals could structure their activities in a manner which eludes the investigative

techniques most likely to be used by the FBI in specific situations.  (*Id.*)  Hardy

concludes that releasing sensitive FBI file numbers could potentially reduce the FBI's

effectiveness in preventing and investigating crimes and attacks targeting the United

States, and enable criminals to circumvent the law.  (*Id.*)  I accept Hardy's

representations for purposes of summary judgment, and find that Defendant has shown

that it properly withheld documents in this category under Exemption 7(E).

Accordingly, Defendant's Motion for Summary Judgment is granted as to the

withholding of information under category 1 of Exemption 7(E).

ii.     <u>Dates and Types of Investigations (Preliminary or Full Investigations)</u>[34]

Exemption 7(E) has been cited with respect to this category on Al-Turki 415.

Hardy states that this exemption has been asserted to protect information pertaining to

---

[34] This is referred to by Defendant as Category (b)(7)(E)-4.  (Hardy Decl., ¶ 9.)  The FBI inadvertently skipped coded categories (b)(7)(E)-2 and -3.  (*Id.* n. 4.)  I will refer to this as category 4 of Exemption 7(E).

the types and dates of investigation(s) referenced in the records at issue.  (Hardy Decl.,

¶ 61.)  Specifically, he asserts that the information withheld, when referenced in

connection with an actual investigation and not in general discussion, reveals the type

of investigation, whether it is a "preliminary" or "full" investigation and the date it was

initiated.  (*Id.*, ¶ 61.)

According to Hardy, disclosure of this information would allow individuals to know

the types of activities that would trigger a full investigation as opposed to a preliminary

investigation, and the particular dates that the investigation covers.  (Hardy Decl., ¶ 61.)

This information would allow individuals to adjust their behavior accordingly.  (*Id.*)

Moreover, the knowledge that a specific activity in general warrants investigation

could likewise cause individuals to adjust their conduct to avoid detection.  (*Id.*)

Hardy asserts that disclosure of this information could reasonably be expected to

impede the FBI's effectiveness and potentially aid in circumvention of the law.  (*Id.*)

Plaintiff denies Hardy's assertions.

I find that Plaintiff has raised valid points about the assertion of this exemption as

to the only document in this category—Al Turki 415.  Plaintiff asserts that Exemption

7(E) has been asserted with respect to the following paragraph: "[Redacted] feels safe

and comfortable at the Safehouse in Boulder, Colorado and asked SA [redacted] if she

could bring a copy of the Qur'an and a calling card on their next visit so she could call

her family in Indonesia."  (Ex. 21.)  I am unable to determine how the section of this

document where Exemption 7(E) is cited relates to or would reveal the date or type of

investigation.  Indeed, Plaintiff asserts that the redactions are of people's names that have already been disclosed to him.  (*See* Ex. 22.)

Moreover, Plaintiff notes that Defendant has produced dates of investigations in other documents.  Indeed, he asserts that dates of investigations are routinely displayed in the documents produced.  (*See* Ex. 21—"Investigation on 11/26/2004."; Ex. 23—"Investigation on 11/18/2004."); Ex. 24—"Investigation on 11/29/2004."); Ex. 25—"Investigation on 12/09/2004.")  In light of disclosures of dates of investigations in other documents, I question why the date(s) at issue here, if any, should be withheld.

Accordingly, Defendant's Motion for Summary Judgment is thus denied without prejudice as to category 4.  Defendant must provide additional information to justify its reliance on Exemption 7(E) with respect to this category through a supplemental declaration or a *Vaughn* index.

### iii.    Location and Identity of FBI and/or Joint Units[35]

Exemption 7(E) has been cited with respect to this category on the following pages: Al-Turki 355; 372; 374; 444; and 485.  Hardy asserts that this exemption was asserted in this category to protect methods and techniques involving the location and identity of FBI units and/or joint units that were involved in the investigation(s) at issue in this case.  (Hardy Decl., ¶ 62.)  The office location and units are usually found in the administrative headings of internal FBI documents.  (*Id.*)  These headings identify the locations of the office and unit that originated or received the documents.  (*Id.*)

---

[35]  This is referred to by Defendant as Category (b)(7)(E)-5.  (Hardy Decl., ¶ 9.)  I will refer to it as category 5 of Exemption 7(E).

Disclosure of the location of the units conducting the investigation would reveal the targets, physical areas of interest, and when taken together with the other locations if identified, could establish a pattern or "mosaic" that identification of a single location would not. (Hardy Decl., ¶ 62.)  If the locations are clusters in a particular area, it would allow hostile analysts to avoid or circumvent those locations, especially if one or more location(s) appeared with frequency or in a pattern. (*Id*.)  Hardy asserts that this would disrupt the method of the investigative process and deprive the FBI of valuable information. (*Id*.)

The withholding of the units involved is justifiable as well under a similar rationale, according to Hardy. (Hardy Decl., ¶ 62.)  Once identified, the unit's areas of expertise become known and an individual would then be aware of the interest of that particular enforcement agency. (*Id*.)  For example, knowing that a unit whose focus is on financial crimes is involved is quite different information than knowing that the unit involved has a focus on crimes of violence. (*Id*.)  This knowledge could allow a subject to employ countermeasures targeted toward concealing particular types of behavior and/or to avoid altogether activities in a particular location.  The revelation of the involvement that one or more units of a differing focus is critical information that can allow the adjustment of behaviors and activities to avoid detection. (*Id*.)[36]

I find from the foregoing that Defendant has shown the applicability of Exemption 7(A) with respect to the information withheld in this category.  The location and identity

---

[36] Plaintiff is without sufficient information to admit or deny the facts asserted by Hardy regarding this category.

of FBI and/or joint units certainly relate to law enforcement purposes, and there is

nothing in the record to suggest that this information is known to the general public.

Moreover, I give credence to Hardy's Declaration asserting that production of

information related to the location and identity of FBI and/or joint units would disclose

techniques and procedures for law enforcement investigations or prosecutions, as

discussed by Hardy.  Plaintiff has not addressed or disputed this issue.   Accordingly,

Defendant's Motion for Summary Judgment is granted to category 5 of Exemption 7(E),

*i.e.,* as to information withheld as to the location and/or identity of FBI and/or joint units.

iv.      Collection and/or Analysis of Information[37]

Exemption 7(E) was asserted on Al-Turki 449-64 to protect methods used by the

FBI in collecting and analyzing information obtained for investigative purposes.  (Hardy

Decl., ¶ 63 and n. 32.)  Plaintiff is without sufficient information to admit or deny this.

Hardy asserts that the release of this information would disclose the identity of

methods used in the collection and analysis of information, including how and from

where the FBI collects information and the methodologies employed to analyze it once

collected.  (Hardy Decl., ¶ 63.)  Plaintiff denies this and avers that the methods referred

to in Al-Turki 449-464 are solely reports of interviews.  (*Compare* Ex. 26—containing

only Al-Turki 449 because Al-Turki 450-464 were withheld in full—with Ex. 27.)

Plaintiff argues that Defendant improperly asserted Exemption 7(E) in regard to

this category to redact routine and commonly known investigatory techniques, i.e.,

---

[37] This is referred to by Defendant as Category (b)(7)(E)-6.  (Hardy Decl., ¶ 9.)  I will refer to it as category 6 of Exemption 7(E).

witness interviews.  *Compare* Ex. 26 with Ex. 27.  It is true that Exemption 7(E) does not

protect routine techniques and procedures already well-known to the public, as

previously discussed.  *Hale*, 973 F.2d at 902.  Defendant asserts in reply, however, that

a comparison of the documents at issue in this category shows that a different

technique was used, although it provides no explanation for this.  In any event,

Defendant is correct that techniques and procedures may be exempt even if they are

known to the public to some extent if disclosure of the circumstances of their use could

lessen their effectiveness."  *Id.* at 902-93.  I find that Defendant has made this showing.

Thus, according to Hardy, disclosure of the information at issue would enable

subjects of FBI investigations to circumvent similar currently used techniques.  (Hardy

Decl., ¶ 63.)  The relative utility of these techniques could be diminished if the actual

techniques were released in this matter.  (*Id.*)  This in turn would facilitate the

accumulation of information by investigative subjects regarding the circumstances under

which the specific techniques were used or requested and the usefulness of the

information obtained.  (*Id.)*  Hardy asserts that releasing this type of information would

allow criminals to educate themselves on the techniques employed for the collection

and analysis of information and would enable them to undertake countermeasures to

circumvent the law.  (*Id.*)  This would neutralize the effectiveness of these techniques

and such individuals would continue to violate the law.  (*Id.*).  While Plaintiff denies

Hardy's assertions, he does not cite any evidence in support of the denial or any reason

to suggest that Hardy's assertions were made in bad faith.

Therefore, I find that Defendant's Motion for Summary Judgment should be granted as to category 6 of Exemption 7(E), *i.e.,* to the extent Defendant withheld information to protect methods used by the FBI in collecting and analyzing information obtained for investigative purposes.

 2. <u>Exemptions for Documents Related to Ongoing Investigations</u>

  a. <u>Exemption (b)(7)(A)</u>

   i. <u>Introduction</u>

Defendant claims that all documents related to ongoing investigation are exempted from release because of Exemption 7(A). That exemption protects records or information compiled for law enforcement purposes which could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. § 552(b)(7)(A).

According to Hardy, the pending investigative files contain the following types of documents: electronic communication, court documents, FBI letter, serial charge out (FD-5 and FD-5a), field airtel (FD-36a), record request form (FD-125), record of information furnished to other agencies (FD-159), evidence form (FD-192 and FD-192a), interview form (FD-302), envelope to hold evidence (FD-340), advice of right form (FD-395), accomplishment report (FD-515), investigative accomplishment form (FD-542), forfeiture/seizure property and receipt for property (FD-597 and FD-634), payment request (FD-794), memorandum, email, letterhead memorandum, FBI record check, form concerning confidential sources, FBI investigative report, FBI investigative insert, other investigative documents, newspaper article, miscellaneous administrative

documents.  (Hardy Decl., ¶ 66.)  Plaintiff is without sufficient information to admit or deny this.

ii.    <u>Reasonable Expectation of Interference</u>

Hardy asserts that when the FBI receives a request for records regarding a pending investigation, it commonly asserts FOIA Exemption 7(A) to protect the pending investigation and/or any related prospective investigation(s) and prosecutions.  (Hardy Decl., ¶ 67.)  Nonetheless, the FBI reviews the records to identify and release any reasonably segregable information contained in the responsive file(s) subject to FOIA that would not jeopardize any ongoing or future enforcement proceedings.  (*Id.*)

According to Hardy, the FBI has reviewed all potentially responsive records subject to FOIA and concluded that it cannot release or provide specific information from certain records which pertain to ongoing investigation(s) without potentially jeopardizing current or prospective investigative and/or prosecutions.  (Hardy Decl., ¶ 67.)  Hardy asserts that Plaintiff is the subject of ongoing investigation(s), pointing to the *in camera*, *ex parte* classified Operational Declaration.  (*Id.*, ¶ 68.)  The main investigative file(s) are ongoing, and the cross references related to Plaintiff appear in various pending and related investigation(s) and prosecutions of other subjects.  (*Id.*)

The FBI is relying on Exemption 7(A) to not only prevent interference with ongoing investigation(s) of Plaintiff, but to avoid disruption to other pending and related investigation(s) and prosecutions.  (Hardy Decl., ¶ 68.)  The FBI has reviewed and categorized the types of exempt records into several categories — Evidentiary/

-72-

Investigative Materials, Administrative Materials, and Public Source/Non-Investigative

Harm Materials.  Each category is discussed in more detail below.  (*Id.*, ¶ 69.)

Defendant asserts that a record can fall into one or more functional categories as

described in the below paragraphs.  (Hardy Decl., ¶ 70.)  For example, a record, such

as an FBI Investigative Report may serve several purposes and may contain multiple

categories of information, such as witness statements, administrative directions, and/or

evidentiary materials.  (*Id.*, ¶ 70.)  Therefore, the information in each record could be

included in multiple categories.  (*Id.*)[38]

iii.   <u>Categories Under This Exemption</u>

<u>Category 1: Evidentiary/Investigative Materials</u>

This category includes copies of records or evidence, analyses of evidence, and

derivative communications discussing or incorporating evidence.  (Hardy Decl., ¶ 73.)  A

derivative communication describes, verbatim or in summary, the contents of the

original record, how it was obtained, and how it relates to the investigation.  (*Id.*)  Other

derivative communications report this information to other FBI field offices, other law

enforcement agencies, or other Federal agencies, either to advise them about the

progress of the investigation, or to elicit their assistance in handling investigative leads.

(*Id.*)  The following subparagraphs describe the types of evidentiary materials in the

---

[38] Plaintiff is without sufficient information to admit or deny Hardy's assertions as to reasonable expectation of interference.

responsive records subject to FOIA and the anticipated harm that could reasonably result from the release of the materials.  (*Id.*)[39]

## Confidential Source Statements

Confidential source and/or witness statements are a principal tool used in proving the facts that form the basis for a prosecution.  (Hardy Decl., ¶ 74.)  These statements were made to the FBI by sources based on either an expressed or implied assurance of confidentiality.  (*Id.*)  They contain information obtained from individuals or organizations that have knowledge of potential or actual criminal activities in this investigation and other related pending investigation(s).  (*Id.*)[40]

Hardy asserts that if the FBI were to release this information, the sources that have chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, physical or mental harm, or even death.  (Hardy Decl., ¶ 74.)  The disclosure of such confidential information would have a chilling effect on these investigation(s) and any future prosecutions resulting from this case, inasmuch as potential witnesses and/or sources might fear exposure and reprisals from the subjects of these investigation(s) and/or from other individuals.  (*Id.*)  Plaintiff denies these assertions, stating as previously discussed that the FBI has produced, in response to this lawsuit, the names of individuals who have cooperated with law enforcement and no adverse consequences have occurred.

---

[39] Plaintiff is without sufficient information to admit or deny these assertions.

[40] Plaintiff is without sufficient information to admit or deny these assertions.

In investigation(s) of this nature, Hardy asserts that it is implicit that a source's

identity and the information he or she provides during an FBI interview will be protected

and afforded confidentiality.  (Hardy Decl., ¶ 74.)  The FBI goes to great lengths to

protect and maintain sources' confidentiality because it is an integral part of a

successful investigation and prosecution.  (*Id.*)  The release of source statements would

disrupt and harm ongoing investigative actions and/or pending prosecutions.  (*Id.*)[41]

<u>Exchange of Information Between the FBI and</u>
<u>Local/State/Federal Law Enforcement Agencies</u>

According to Hardy, release of information exchanged between the FBI and its

law enforcement partners, whether local, state, or federal, would disclose evidence,

investigative information, and criminal intelligence developed by various agencies who

have cooperated with—and provided information and records to—the FBI in this

ongoing investigation.  (Hardy Decl., ¶ 74.)  Inherent in this cooperative effort is the

mutual understanding that information provided to the FBI by these agencies will not be

prematurely released.  (*Id.*)

This information was gathered, and is continuing to be gathered, to help identify

subjects, suspects, and/or other individuals of potential investigative interest; to identify

and assist in locating witnesses and/or confidential sources; and to further the progress

of this investigation.  (Hardy Decl., ¶ 74.)  Release of information would identify the

investigative interest of particular individuals; reveal the scope and focus of the

---

[41] Plaintiff denies that the FBI goes to great lengths to protect and maintain sources' confidentiality, reiterating that the FBI has produced the names of individuals who have cooperated with law enforcement.  Otherwise, he is without sufficient information to admit or deny the facts in this paragraph.

investigation; identify and tip off individuals who are of interest to law enforcement; and

provide suspects or targets the opportunity to destroy evidence and/or alter their

behavior to avoid detection.  (*Id.*)[42]

Documents Containing Information Shared
Between FBI and Foreign Government Agencies

The FBI has worked closely with foreign government agencies who have become

partners with the FBI in its criminal and transnational investigation(s).  (Hardy Decl.,

¶ 76.)  The FBI works with a number of foreign governments to acquire and share

information.  The fight against transnational crimes is an international concern and

requires the cooperative efforts of the United States and foreign governments in order to

combat it.  (*Id.*)

Hardy states that the FBI and foreign government agencies have an

understanding that information shared will be protected so as to avoid premature

release.  (Hardy Decl., ¶ 76.)  Prematurely releasing information exchanged between

the FBI and foreign government agencies would not only disclose the evidence,

investigative information, and criminal intelligence that was developed and shared, but it

would damage the progress made in this investigation(s).  (*Id.*)

Information was gathered, and is continuing to be gathered, to help identify

subjects, suspects, and/or other individuals of potential investigative interest; to identify

and assist in locating witnesses and/or confidential sources; and to further the progress

of this investigation.  (Hardy Decl., ¶ 76.)  The release of such information would,

---

[42] Plaintiff is without sufficient information to admit or deny the facts in this section.

according to Hardy, identify the FBI's and the foreign government agencies' investigative interests in particular individuals; reveal the scope and focus of the investigation; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence and/or later their behavior to avoid detection.  (*Id.*)  More importantly, Hardy asserts that the release of this information would disclose the identity of foreign government agencies that cooperate with the FBI and this would ultimately have a chilling effect on the FBI's working relationships with foreign government agencies. (*Id.*)[43]

### Information Concerning Physical or Documentary Evidence

According to Hardy, disclosure of information concerning physical or documentary evidence gathered during the pendency of this investigation, or information discussing, describing, or analyzing the physical or documentary evidence, would undermine efforts made in this investigation(s) and disrupt future prosecutions. (Hardy Decl., ¶ 77.)  Hardy asserts that the premature release of such information would reveal the scope and focus of this investigation as well as the identity of subjects who are of investigative interest.  (*Id.*)  Once subjects become aware of the FBI's interest in their activities, they may take actions to conceal their activities, elude detection, and/or suppress or fabricate evidence. (*Id.*)

Also, the disclosure of physical or documentary evidence and/or information concerning this evidence could lead to the identification of confidential sources.  (Hardy

---

[43] Plaintiff is without sufficient information to admit or deny the facts in this section.

Decl., ¶ 77.)  This would directly and adversely impact this investigation and any prospective prosecutions.  (*Id.*)

Lastly, revealing such information could result in the possible intimidation of or harm to witnesses and sources who have assisted the FBI.  (Hardy Decl., ¶ 77.)  Hardy asserts that the information contained in these records is pertinent and integral to the FBI's ongoing investigation(s) of Plaintiff, and to current and future prosecutions.  (*Id.*)[44]

Category 2: Administrative Materials

Materials falling within this category include items such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines.  (Hardy Decl., ¶ 78.)  The following subparagraphs describe the types of administrative materials contained in the files and the anticipated harms that could reasonably result from the disclosure of such materials in the midst of these ongoing investigation(s) and prosecution, and prior to any prospective prosecutions. (*Id.*)  In many instances, administrative information is contained at the beginning or end of correspondence or documents that fall within other categories of documents; therefore, to release details on this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigation.  (*Id.*)[45]

---

[44] Plaintiff is without sufficient information to admit or deny the facts in this section, except that he denies that revealing information about physical or documentary evidence could result in the possible intimidation of or harm to witnesses and sources who have assisted the FBI.  He avers as to this denial that the FBI has produced, in response to this lawsuit, the names of individuals who have assisted it.

[45] Plaintiff is without sufficient information to admit or deny these allegations.

## Reporting Communications

These communications permit an agency to monitor the progress of the investigation and to facilitate its conduct.  (Hardy Decl., ¶ 79.)  Hardy states they have the potential to reveal or confirm the cooperation of other local, state, federal, or foreign government agencies in this investigation.  (*Id.*)  They are replete with detailed information about the FBI's investigative activities as well as detailed information about potential witnesses/confidential sources for interview.  (*Id.*)  Additionally, they contain background information about third-party individuals, the origins of pertinent information connecting them to the investigation, and their connections to subjects and their relationship with the pending investigation.  (*Id.*)

According to Hardy, the release of this information would reveal the nature and scope of ongoing investigation(s) by revealing:  the investigative steps taken to obtain witness and source interviews; techniques and investigative methods used to compile and/or solicit information from various sources; and any potential or perceived challenges in the investigation(s).  (Hardy Decl., ¶ 79.)[46]

## Miscellaneous Administrative Documents

These materials include items such as storage envelopes, transmittal forms, and standardized forms used for a variety of purposes.  (Hardy Decl., ¶ 80.)  These types of materials have been used throughout this investigation for many routine purposes; however, the manner in which they have been used and organized in the files also reveals information of investigative value.  (*Id.*)

---

[46] Plaintiff is without sufficient information to admit or deny these allegations.

Hardy asserts that the premature disclosure of this information could undermine this pending and ongoing investigation as well as pending and prospective prosecutions.  (Hardy Decl., ¶ 80.)  An example is the evidentiary envelope used to store records obtained from a confidential source or witness.  (*Id.*, ¶ 81.)  While the envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the persons who provided information.  (*Id.*)  In addition, the mere fact that an FBI SA used an envelope for the storage of records he/she obtained from a source is revealing on its own.  (*Id.*)  The disclosure of these materials could harm the investigation by providing details that, when viewed in conjunction with knowledge possessed by subjects, would provide information useful in identifying witnesses, investigative and prosecutorial strategies, and items of evidence.  (*Id.*)[47]

Administrative Instructions

This type of information, whether it originates in communications from the FBI or other government or law enforcement agencies, would disclose specific investigative procedures employed in this investigation.  (Hardy Decl., ¶ 82.)  Hardy asserts that release of this information would permit subjects or individuals of investigative interest to anticipate law enforcement actions and to alter, destroy, or fabricate evidence.  (*Id.*)

Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries and affirmative taskings to various FBI field offices or to other government or law enforcement agencies.  (Hardy Decl., ¶ 83.)  These instructions are commonly referred to as "investigative leads" and

---

[47] Plaintiff is without sufficient information to admit or deny Hardy's assertions in this section.

are set forth in documents throughout the course of these investigations.  (*Id.*)

Revelation of the specific details could render them useless to the FBI in future

investigations as criminals would be able to anticipate the FBI's plans and could avoid

certain actions and/or activities.  (*Id.*)[48]

Category 3: Public Source/Non-Investigative Harm Materials

Hardy states that the only information within the investigative files that the FBI

can release to Plaintiff is reflected in the 143 pages of public source material released to

Plaintiff on October 1, 2014, which did not pose an investigative harm.[49]  (Hardy Decl.,

¶ 84.)  Plaintiff admits that the FBI determined that this information could be released

without harm to the ongoing investigation(s), as the information is already known to the

public and/or is not reasonably expected to interfere with pending criminal law

enforcement proceedings or prosecutions.  (*Id.*)  He also admits that the disclosure

of this information would not result in any of the various harms under Exemption 7(A),

as described in Hardy's Declaration.  (*Id.*)

Hardy asserts that during the course of an FBI investigation, including this one,

relevant and pertinent articles in newspapers, magazines or other periodicals are placed

by FBI employees into the investigative file.  (Hardy Decl., ¶ 85.)  These materials

contain information obtained from public sources such as newspapers, on-line material,

and other publicly-available information including court transcripts, criminal affidavits,

---

[48] Plaintiff is without sufficient information to admit or deny these assertions.

[49] Public source material was released to Plaintiff and can be found on Al-Turki 1-143.

and other court filings.  (*Id.*)  FBI employees place these public source materials into the file for background and review purposes.  (*Id.*)

In this case, Plaintiff admits that the public source material that was released to him consisted primarily of newspaper articles and internet articles.  (Hardy Decl., ¶ 85.) This non-investigative harm material is comprised of limited records, the release of which does not harm or otherwise jeopardize the ongoing investigation(s).  (*Id.*)

iv.   <u>Analysis</u>

As noted earlier in this Order, Exemption 7(A) has two requirements: (1) that the records or information be compiled for law enforcement purposes; and (2) the production of such records or information could reasonably be expected to interfere with enforcement proceedings.  *See* 5 U.S.C. § 552(b)(7)(A).  The Supreme Court has held that generic categorical determinations of exemption may be made under Exemption 7(A).  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 235-36 (1978).  Thus, "FOIA permits agencies to craft rules exempting certain categories of records from disclosure under Exemption 7(A) instead of making a record-by-record showing." *Center for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 940 (D.C. Cir. 2003).  Under this approach, "the government must divide information it seeks to withhold into 'categories ... [that are] sufficiently distinct to allow a court to grasp how each ... category of documents, if disclosed, would interfere with the investigation.'"  *Id.* (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986) (further quotation and internal quotation marks omitted)).

I find that Defendant has met its burden under Exemption 7(A) with respect to the categories of documents/information that have been withheld.  The first requirement is met because Defendant has shown that the records or information in all three categories were compiled by the FBI for law enforcement purposes.  (Hardy Decl., ¶ 68.)  Indeed, Hardy has shown that the FBI is relying on Exemption 7(A) to not only prevent interference with ongoing investigation(s) of Plaintiff, but to avoid disruption to other pending and related investigation(s) and prosecutions.  (*Id.*)  Plaintiff has not refuted Hardy's assertion in any manner or presented any evidence of bad faith.

I also find that the second requirement is met for the reasons detailed above by Hardy.  That is, the release of the requested documents could, among other things, lead to harm to confidential sources, tip off targets of investigation as to law enforcement interest in them, disclose identifies of foreign government agencies cooperating with the FBI, disclose investigative capabilities, and reveal the scope and nature of ongoing investigations.  Hardy has shown that all of this could harm current investigations as well as future investigations.

Therefore, Defendant's Motion for Summary Judgment is granted to the extent Defendant claims that documents/information related to the ongoing investigation are protected by Exemption 7(A).

> b.    Additional Exemptions for Documents Related to Ongoing Investigation

Since I have found that the documents related to ongoing investigation are exempt from release under Exemption 7(A), I need not address all the other exemptions

that Defendant relies on with respect to this category of documents.  However, I note

that Plaintiff has not objected to or raised any valid arguments regarding Exemptions 1,

3, 6 and 7(C), 7(D) as to names, identifying information, and information provided by

individuals and foreign government agencies under an expressed assurance of

confidentiality, and 7(E), and I thus find that Defendant met its burden of showing that

these exemptions are also applicable.[50]  I need not, and have not, addressed the other

exemptions relied on by Defendant as to documents regarding ongoing investigation.

### D.   The Adequacy of the FBI's Search for Documents

Finally, I address the issue of whether the FBI's search for responsive

documents was adequate.  Plaintiff asserts that it was not, and thus asserts that

summary judgment is not appropriate.  According to Defendant, the Central Records

System ["CRS"] enables the FBI to maintain information which it has acquired in the

course of fulfilling its mandated law enforcement responsibilities.  (ECF No. 14-1,

Declaration of David M. Hardy ["First Hardy Decl."], ¶ 13.)  The records maintained in

the CRS consist of administrative, applicant, criminal, personnel, and other files

compiled for law enforcement purposes.  (*Id.*)  The subject matter of a file may relate to

an individual, organization, company, publication, activity, or foreign intelligence matter

(or program).  (*Id.*)

---

[50] Plaintiff did deny certain of Hardy's assertions regarding intelligence sources at issue in Exemption 1, asserting that Defendant has disclosed the names of intelligence sources in this case. However, Plaintiff has not presented any evidence or basis to refute Hardy's Declaration on this issue that the information withheld in this category pertains to classified intelligence sources.  Thus, I reject this argument.

Certain records in the CRS are maintained at FBI Headquarters.  (First Hardy Decl., ¶ 13.)  Records that are pertinent to specific field offices of the FBI are maintained in those field offices.  (*Id.*)  Although the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA requests.  (*Id.*)  The mechanism that the FBI uses to search the CRS is the Automated Case Support System ["ACS"].  (*Id.*)

The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.  (First Hardy Decl., ¶ 14.)  The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.  (*Id.*)  The entries in the General Indices fall into two categories:  (a) a "main" entry -- a "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS; and (b) a "reference" entry -- a "reference" entry, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.  (*Id.*)[51]

In response to Plaintiff's FOIA request, the FBI conducted an automated search of the CRS for records on Homaidan Al-Turki.  (First Hardy Decl; ¶ 19.)  The FBI located pending main file(s) that were indexed under the subject's name.  (*Id.*)[52]

---

[51] Plaintiff is without sufficient information to admit or deny these facts.

[52] Plaintiff is without sufficient information to admit or deny these assertions, including whether the FBI located files indexed under Plaintiff's name.  He notes, however, that the FBI produced no documents in response to Plaintiff's FOIA request or appeal of that request.  (ECF No. 26-3—establishing that the records were produced after Plaintiff filed this lawsuit).

Upon commencement of this litigation, the FBI conducted another search of the CRS in an effort to identify all potentially responsive main and cross-reference files subject to FOIA. (First Hardy Decl., ¶ 19.) The search was laborious and difficult due to subject's name as well as the number of aliases located with the FBI's search. (*Id.*)

With some names, such as Middle Eastern names, the FBI must perform an around-the-clock search meaning each name is searched in every position, i.e., first, middle, and last. (First Hardy Decl., ¶ 19.) A three-part name would require several searches. For example, the name Homaidan Al-Turki would require a search of the following: "Turki, Homaidan, Al," "Alturki, Homaidan," "Homaidan, Al, Turki," and "Homaidan, Alturki". (*Id.*) Additionally, each alias had to be searched. As a result of multiple searches, Hardy states that the total number of potentially responsive records located and subject to FOIA was voluminous. (*Id.*)[53]

Turning to my analysis, an agency's search in response to FOIA requests is not required to be exhaustive or perfect, only "reasonable." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009); *Daly v. Fed. Bureau of Prisons*, No. 09-cv-01722-PAB-BNB, 2011 WL 588046, at *4 (D. Colo. Jan. 7, 2011). The Fourth Circuit noted on this issue:

> In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents. In demonstrating the adequacy of its search, [an agency may rely on an] affidavit [that is] reasonably detailed, setting forth the search terms and the

---

[53] Plaintiff is without sufficient information to admit or deny the facts asserted in this and the previous paragraph.

> type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search.

*Rein*, 553 F.3d at 362 (quoting *Ethyl Corp. v. U.S. Envtl. Prot. Agency*, 25 F.3d 1241, 1246-47 (4th Cir. 1994)).  "Where the agency has provided such affidavits, the nonmoving party must either produce evidence contradicting the adequacy of the agency's search or evidence of the agency's bad faith."  *Schwarz v. FBI*, No. 98-4036, 1998 WL 667643, at *2 (10th Cir. Sept. 17, 1998).

The reasonableness of the agency's search for documents responsive to the FOIA request depends upon the facts of each case.  *Info. Network for Responsible Mining v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009).  "The search need not be exhaustive to meet the reasonableness requirement."  *Id.*  Indeed, every responsive document need not be found, and even the existence of undisclosed documents does not foreclose finding that the search was reasonable.  *See Brillhart v. FBI*, 869 F. Supp. 2d 12, 16 (D.D.C. 2012); *Schwarz*, 1998 WL 667643, at *2.  "[T]he focal point in the judicial inquiry is the agency's search process, not the outcome of its search."  *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009); *see also North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.C. Cir. 2011).

Here, Defendant asserts that the FBI's search for responsive records subject to FOIA was adequate.  The FBI searched for files with Plaintiff's name ("main" files) as well as files that mentions him ("cross-reference"files).  (Hardy First Decl., ¶ 19.)  The FBI also searched using variations of Plaintiff's name.  (*Id.*)

Plaintiff points out, however, that while "there is no requirement that an agency search every record system . . . the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). He argues that where, as here, "it is not clear from the [government's] affidavit that the Central Records System is the *only* possible place that responsive records are likely to be located," the government has not met its burden to establish that the search was sufficient. *Id.*; *see also Rosenberg v. U.S. Dep't of Immigration and Customs Enforcement*, 959 F. Supp. 2d 61, 72 (D. D.C. 2013) (noting that the FBI searched the CRS for responsive documents, but did not aver that the CRS "is the only collection of files likely to contain responsive documents."). While Hardy did not address this issue in his Third Declaration, Defendant attached as Exhibit 7 to its Reply Brief a Fourth Declaration of Hardy. This Declaration shows that the FBI considered the comprehensiveness of the CRS and Plaintiff's request and concluded that the CRS is the only place where documents responsive to Plaintiff's request would reasonably be found. (Hardy Fourth Decl., ¶ 6.) No evidence has been presented to the contrary.

Plaintiff also asserts that a search is inadequate when "the record itself reveals positive indications of overlooked materials." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (internal quotation marks omitted). Plaintiff notes that the record indicates Defendant's search overlooked materials related to the FBI's involvement in Plaintiff's request to be transferred back to his home country of Saudi Arabia. (*See* ECF No. 28-5.) The omission of these documents from Defendant's

production reveals, according to Plaintiff, either that materials were overlooked or that Defendant has improperly withheld documents that are not related to an ongoing investigation. Thus, Plaintiff contends that Defendant has not established it is entitled to summary judgment. I also reject this argument.

As Defendant points out in its Reply Brief, Plaintiff's argument centers on a handful of e-mails between federal government employees obtained from the state through a request under the Colorado Criminal Justice Records Act ["CCJRA"], Colo. Rev. Stat. § 24-72-304(1). The CCJRA is broad and requires open access to records regarding "official actions." *Id.*, §§ 24-72-302(4), 303(1). In contrast to the CCJRA, FOIA simply requires a reasonable search. Here, for the reasons outlined by Hardy in his Third and Fourth Declarations, I find that the FBI's search was reasonable despite not finding the emails Plaintiff obtained from the state. See *Rein*, 553 F.3d at 364 ("[t]he Agencies' failure to produce specific documents does not, of itself, yield the conclusion that the search was inadequate", and noting that an agency does not have to "search every file where a  document could possibly exist"); *Brillhart*, 869 F. Supp. 2d at 16 (finding that plaintiff failed to create a genuine factual dispute about the adequacy of the FBI's reasonably calculated search for records responsible to his request based on a declaration from Hardy describing the CRS and the agency's search of that system, despite plaintiff's claim of an inadequate search).[54]

---

[54] The *Valencia-Lucena* case cited by Plaintiff is inapposite. There, the defendant had failed to search the center it had identified as a likely place where the requested documents might be located. *Valencia-Lucena*, 180 F.3d at 323. That is not the situation here.

Accordingly, I reject Plaintiff's argument that the FBI failed to conduct a reasonable search.

IV.    CONCLUSION

In conclusion, it is

ORDERED that Defendant's Motion for Summary Judgment is **GRANTED IN PART, DENIED AS MOOT IN PART, AND DENIED WITHOUT PREJUDICE IN PART**. More specifically, it is

ORDERED that the Motion for Summary Judgment is **GRANTED** to the extent Defendant has withheld documents or information:

A)     *not* related to ongoing investigation under Exemption 1, 5 and 7(A) in full; category 1 of Exemption 3 (relating to the National Security Act); categories 1, 6, 7 and 8 of Exemptions 6 and 7(C), category 3 of Exemptions 6 and 7(C) as to all documents except Al-Turki 688, category 4/5 of Exemptions 6 and 7(C) as to all documents except Al-Turki 372; and categories 1, 5 and 6 of 7(E); and

B)     *related* to ongoing investigation under Exemptions 7(A), 3, 6, 7(C) and 7(E) in full, and 7(D) as to names, identifying information, and information provided by individuals and foreign government agencies under an expressed assurance of confidentiality.  It is

FURTHER ORDERED that the Motion for Summary Judgment is **DENIED AS MOOT** as to category 2 of Exemption 3 (information withheld under the Child Victims' and Child Witnesses' Rights Act) and as to category 2 of Exemptions 6 and (7)(C).  It is

FURTHER ORDERED that the Motion for Summary Judgment is **DENIED WITHOUT PREJUDICE** as to documents not related to ongoing investigation as to all categories of Exemption 7(D), the withholding of Al-Turki 688 under category 3 of Exemptions 6 and 7(C), the withholding of Al-Turki 372 under categories 4/5 of Exemptions 6 and 7(C), and category 4 of 7(E).  Finally, it is

ORDERED that as to the portions of the Motion for Summary Judgment which were denied without prejudice, Defendant shall provide a supplemental declaration and/or *Vaughn* index by **Friday, April 22, 2016**, to address the exemptions and/or documents where I found that I did not have sufficient information to make a ruling. Plaintiff shall file a response to the information provided by Defendant by **Friday, May 13, 2016**.  Defendant may, if it wishes, file a reply by **Tuesday, May 31, 2016**.

Dated:  March 30, 2016

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge